[No. 22868–4–I.   Division One.   April 23, 1990.]

JESSE LUNA, ET AL, *Respondents,* v. PAUL GILLINGHAM, *Appellant.*

*E. Douglas Pibel, Jr.,* and *Pibel & Ward,* for appellant.

*Ronald J. Meltzer* and *Sinsheimer & Meltzer,* for respondents.

PEKELIS, J.—Paul Gillingham appeals from an order of the Superior Court requiring him to refund a portion of the attorneys' fees paid him pursuant to a contingent fee agreement.

## I
### FACTS

The issues raised in this appeal arise out of a different lawsuit, Smith v. King County, King County cause 83–2–13277–1 (Aug. 8, 1985), in which Paul Gillingham, an attorney, represented plaintiffs Jesse Luna, David Smith, Louis Bolar and William Jackson. That lawsuit was successful, and Gillingham was compensated pursuant to a contingent fee agreement. The plaintiffs then filed the present action against Gillingham, alleging that he misrepresented the

contingent fee owing under the agreement and that he violated CPR DR 3–102[1] by entering into a fee–splitting agreement with a nonlawyer. The following facts were presented at the trial on these claims.

After completing his first year of law school, Kenneth Jennings began working part time at the Department of Youth Services. He became involved in helping other employees resolve labor disputes and eventually determined that the employees might have claims for back wages and benefits. Jennings contacted Gillingham, who allowed him to use his office space to work on the case and provided him with some legal assistance.

In August and September of 1983, the plaintiffs herein retained Gillingham to pursue their claims for them. Each of the plaintiffs signed a contingent fee agreement ("Retainer Agreement") which provided that Gillingham would receive a percentage of any "gross recovery."

Jennings did a substantial amount of work on the case. At some point during the pendency of the case, Gillingham and Jennings agreed that Jennings would receive $20 per hour for his services, contingent on a recovery allowing payment. Jennings became Rule 9 certified in November 1983.

In November 1984, the plaintiffs prevailed in their lawsuit, Smith v. King County, *supra*. Gillingham requested an award of attorneys' fees, under applicable statutes, and the trial judge requested that he provide time records reflecting attorneys' fees and costs incurred in the case. In an affidavit submitted in July 1985, Gillingham informed the court of his agreement to pay Jennings $20 per hour. He also informed the court of his own hourly fee and set forth the number of hours he and Jennings had spent on the case. The trial judge awarded attorneys' fees of $37,977.50, the

---

[1]The parties appear to agree that the Code of Professional Responsibility, rather than the Rules of Professional Conduct, govern this case. Whether or not this is correct, CPR DR 3–102 is identical to the comparable provision in the Rules of Professional Conduct, RPC 5.4(a).

full amount requested for Gillingham's and Jennings' time. The judge's oral opinion indicates that the court contemplated the fee award would apply as a credit against the contingent fee owed by the plaintiffs.

After the award of attorneys' fees was made, Jennings and Gillingham discussed how to apply the fee award and how to determine the contingent fee owed from each client. After considering various ways of computing the contingent fee, they elected to add the fee award to the plaintiffs' damages and to calculate the contingent fee based on the total amount. Jennings then sent each of the plaintiffs a letter explaining how the contingent fee had been calculated and requesting that they sign and return an "Acceptance of Judgment." Jennings and Gillingham did not inform the plaintiffs of other possible methods of computing the contingent fee. Each of the plaintiffs signed and returned an Acceptance of Judgment.

Sometime after the court had awarded attorneys fees, Gillingham decided to give Jennings one-half of the contingent fee he had earned. Gillingham testified that he did this in recognition of Jennings' performance and the amount of work done by him. Apparently, neither the trial judge nor the plaintiffs were informed of this change in Gillingham's agreement with Jennings.

The plaintiffs subsequently filed a separate action against Gillingham, currently on appeal before this court, seeking damages and reimbursement of fees paid to him. The case was tried to the court. Based upon the above undisputed facts, the trial court concluded that the Retainer Agreement was ambiguous. The court then construed the agreement against Gillingham and determined that the court-awarded attorneys' fees should not have been added to the plaintiffs' gross recovery, but rather applied as a credit against the contingent fee owed by the plaintiffs. The difference between this method of calculating the contingent fee and the method employed by Gillingham resulted in the following monetary judgments for plaintiffs:

| Jesse Luna | $1,785.60 |
| David Smith | 1,606.28 |
| Louis Bolar | 802.38 |
| William Jackson | 420.96 |

The plaintiffs were awarded prejudgment interest on these amounts.

The trial court also concluded that Gillingham's agreement to divide the contingent fee with Jennings violated CPR DR 3–102, which prohibits a lawyer from sharing legal fees with a nonlawyer. The court determined that Gillingham's conduct did not constitute fraud or gross misconduct, and thus concluded that a complete forfeiture of fees was not appropriate.

The court did find, however, that the division of fees affected the quality of legal services provided, since "disclosure to [the trial judge of] the true rate paid to Mr. Jennings more probably than not would have resulted in [the trial judge in that matter] awarding greater attorneys' fees to the plaintiff than were otherwise obtained . . .." The trial court then determined that "each plaintiff on a more probable than not basis could have received a sum equal to a $25–30/hr. charge for Mr. Jennings' services instead of an award based on $20/hr." Accordingly, the court awarded the following additional damages to the plaintiffs:

| Jesse Luna | $975.00 |
| David Smith | 875.00 |
| Louis Bolar | 425.00 |
| William Jackson | 225.00 |

The court's oral decision indicates that it arrived at these figures by discounting the contingent fees paid by the plaintiffs by 25 percent.

On appeal Gillingham contends (1) that the Retainer Agreement is not ambiguous, (2) that even if it is, plaintiffs are equitably estopped from challenging the disbursement of fees to Gillingham, (3) that he did not breach CPR DR

3–102, and (4) that even if he did, plaintiffs did not prove that they were damaged as the result of the fee splitting.

Before we consider Gillingham's appeal, we address the plaintiffs' contention that this appeal should be dismissed for failure to assign error to any of the trial court's findings of fact. The plaintiffs base this claim on Gillingham's failure to assign error to the trial court's findings that the Retainer Agreement was ambiguous and that Gillingham engaged in an impermissible fee–splitting agreement. We agree with Gillingham that these are conclusions of law incorrectly denominated findings of fact. Thus, he is, in effect, challenging only the trial court's conclusions of law. We therefore review the merits of his appeal. *See State v. Williams*, 96 Wn.2d 215, 220–21, 634 P.2d 868 (1981) (conclusions of law incorrectly denominated findings of fact are subject to appellate review).

## II
### ANALYSIS
### A. The Retainer Agreement

The Retainer Agreement does not directly address the issue of what is to be done with court–awarded attorneys' fees. Gillingham contends, however, that since it does provide that he is to receive a percentage of any "gross recovery," there is no ambiguity. He claims that the term "gross recovery" includes court–awarded attorneys' fees and that his contingent fee should be computed by adding the court–awarded attorneys' fees to the plaintiffs' recovery. The plaintiffs contend that the term "gross recovery" is ambiguous and should be construed against Gillingham. Thus, they assert, the award of attorneys' fees should apply as a credit in computing Gillingham's contingent fee.

A written contract is ambiguous when its terms are uncertain or capable of being understood in more than one manner. *Universal/Land Constr. Co. v. Spokane*, 49 Wn. App. 634, 636–37, 745 P.2d 53 (1987). The Retainer Agreement does not define "gross recovery." "Gross recovery" could mean either the judgment for damages alone or the

judgment plus court–awarded attorneys' fees. The term is thus ambiguous, and the Retainer Agreement leaves unresolved the question of how court–awarded attorneys' fees should be allocated.

Washington courts have not addressed the issue of how court–awarded attorneys' fees should be allocated when a contingent fee agreement is silent on the subject. However, courts from other jurisdictions have addressed this issue. In *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or. 449, 502 P.2d 1378, 1380, 57 A.L.R.3d 469 (1972), the Oregon Supreme Court noted that there are three possible ways of allocating court–awarded attorneys' fees when computing a contingent fee. First, the attorney may retain the fee award in addition to the contingent fee payable from the judgment. Second, the fee award may be credited to the client as an offset in computing the contingent fee. Lastly, the fee award may be added to the amount of the judgment in determining the total recovery subject to the contingent fee percentage.

The *Chalmers* court held that although attorneys and their clients are free to provide for the allocation of court–awarded attorneys' fees as they choose, any court–awarded fees must be applied as a credit to the client in computing the contingent fee when the contingent fee agreement is silent on the subject. *Chalmers*, 502 P.2d at 1380–81; *accord, Lowe v. Pate Stevedoring Co.*, 595 F.2d 256, 257 (5th Cir. 1979). *Contra, Carmichael v. Iowa State Hwy. Comm'n*, 219 N.W.2d 658 (Iowa 1974) (where the contingent fee agreement is ambiguous, court–awarded attorneys' fees are added to the damage recovery in computing contingent fee).

Similarly, in *Hamilton v. Ford Motor Co.*, 636 F.2d 745, 748 (D.C. Cir. 1980), the court held that public policy considerations require that the burden be placed on the attorney to provide for allocation of court–awarded attorneys' fees in the contingent fee agreement. *Hamilton*, 636 F.2d at 749. "The client expects that the fee agreement will provide the sole source of income for the attorney. The attorney, on the other hand, has the technical knowledge and experience

to be able to anticipate awards of attorneys' fees." *Hamilton,* 636 F.2d at 749.

The analysis in these cases is sound and comports with the principle of contract construction which requires that ambiguous contract language be construed against the drafter. *See Universal/Land,* 49 Wn. App. at 638. It is also in keeping with the strong public policy in Washington which requires counsel to fully disclose and explain the contingent fee agreement to the client. *See, e.g.,* RPC 1.5. Thus, we hold that because Gillingham failed to provide for allocation of court–awarded attorneys' fees in the contingent fee agreement, the trial court correctly ruled that the court–awarded attorneys' fees should apply as a credit to the plaintiffs in computing Gillingham's contingent fee.[2]

### B. Equitable Estoppel

We next address Gillingham's contention that even if the Retainer Agreement is ambiguous, the plaintiffs are equitably estopped from challenging his allocation of the court–awarded attorneys' fees because they each signed an Acceptance of Judgment which described his allocation of the fee award.

The elements of equitable estoppel are: (1) an admission, statement or act inconsistent with a claim afterward asserted; (2) action by another in reliance upon that act, statement or admission; and (3) injury to the relying party resulting from allowing the first party to contradict or repudiate the prior act, statement or admission. *Board of Regents v. Seattle,* 108 Wn.2d 545, 551, 741 P.2d 11 (1987). Gillingham asserts that the elements of equitable estoppel are met here because (1) each of the plaintiffs signed an Acceptance of Judgment, which described the intended allocation of the court–awarded attorneys' fees and asked for comments, (2) he relied on the plaintiffs' act, and (3) he disbursed funds in reliance on the plaintiffs' act.

---

[2]Gillingham's argument that the trial court reformed the Retainer Agreement is based on the assumption that the agreement was unambiguous. However, since we have resolved that issue against Gillingham, his argument necessarily fails.

However, in order to create an estoppel, the party claiming to have been influenced by the conduct or declarations of another must have been unaware of the true facts. *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 905, 691 P.2d 524 (1984), *cert. denied,* 471 U.S. 1065, 1075, 85 L. Ed. 2d 497, 510, 105 S. Ct. 2140, 2154 (1985). Here, Gillingham does not dispute that he considered alternative methods of allocating the attorneys' fee award and computing the contingent fee. He argues, however, that disclosure of his intended allocation of the award was sufficient to fulfill any obligation he may have had.

We do not agree. Gillingham had information which the plaintiffs did not have. In view of the fiduciary nature of the attorney–client relationship, Gillingham had an obligation to share this information with his clients. Under these facts, we cannot conclude that Gillingham was unaware of the true facts. *See Chemical Bank,* 102 Wn.2d at 905. Thus, we hold that plaintiffs are not equitably estopped from challenging Gillingham's allocation of the court–awarded attorneys' fees.

## C. CPR DR 3–102 Violations

Gillingham next contends that the trial court erred in concluding that his agreement to divide fees with Jennings was an impermissible fee–splitting agreement. He argues that attorneys may disburse fees paid by their clients as they choose, and further points out that APR 9(c)(2) permits payment of Rule 9 interns. He reasons that APR 9(c)(2) would be abrogated if dividing a contingent fee with a Rule 9 intern constituted impermissible fee splitting.

CPR DR 3–102 prohibits a lawyer from sharing fees with a nonlawyer except under certain narrow exceptions. The purpose of this rule is to prevent the possibility of control of a lawyer by a nonlawyer. *See* C. Wolfram, *Modern Legal Ethics* 510 (1986). On its face, the rule does prohibit dividing fees with a Rule 9 intern, since Rule 9 interns are "nonlawyers."

Although the issue presented here is an important one not yet decided by our courts, it has not been adequately briefed by either party. Thus, because as discussed below, we need not resolve this issue in deciding this appeal, we decline to decide whether CPR DR 3–102 prohibits sharing fees with a Rule 9 intern.

### D. Damages

Gillingham contends that even if sharing his contingent fee with Jennings did constitute impermissible fee splitting, the trial court erred in concluding both that the fee splitting affected his representation of the plaintiffs and that there was resultant damage to them. We agree.

The trial court found that the plaintiffs were damaged, reasoning that "disclosure to [the trial judge of] the true rate paid to Mr. Jennings more probably than not would have resulted in [the trial judge] awarding greater attorneys' fees to the plaintiff than were otherwise obtained . . .." The court then reduced Gillingham's contingent fee by 25 percent. This was based on the court's determination that "each plaintiff on a more probable than not basis could have received a sum equal to a $25–30/hr. charge for Mr. Jennings' services instead of an award based on $20/hr."

When courts are measuring contract damages, uncertainty as to the extent or amount of damages will not preclude recovery of damages *where there is no uncertainty as to the existence of damage or as to causation. Jacqueline's Wash., Inc. v. Mercantile Stores Co.,* 80 Wn.2d 784, 786, 498 P.2d 870 (1972). The trial judge in the plaintiffs' original action based the award of attorneys' fees on Gillingham's fee affidavit. It is undisputed that this affidavit set forth a reasonable hourly rate for the services of the Rule 9 intern at $20 per hour and accurately set forth his true hours. The trial court here determined that the trial judge in the previous action would have accepted a higher hourly rate. Because there was no evidence to support this determination, it was purely speculative.

In sum, there is nothing in the record to support the court's conclusion that the later division of fees was the proximate cause of any harm to plaintiffs, nor any evidence of what damage amount might have been sustained. Gillingham's decision to share a portion of *his* fee appears only to have diminished Gillingham's share of attorneys fees. We therefore hold that the trial court erred in reducing Gillingham's contingent fee by an additional 25 percent.

In conclusion, we affirm the trial court's allocation of the court–awarded attorneys' fees and computation of the contingent fee but reverse the reduction of the contingent fee by an additional 25 percent.

GROSSE, A.C.J., and BAKER, J., concur.

Reconsideration denied May 23, 1990.

Review denied at 115 Wn.2d 1020 (1990).