19 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NISQUALLY INDIAN TRIBE, Plaintiff-Appellant,
v.
CITY OF CENTRALIA; et al., Defendants,
v.
U.S. DEPT. OF ENERGY; et al., Third-Party-Defendants,
v.
CULLEN & CULLEN, Appellee.
 No. 92-36836.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided Feb. 25, 1994.
 
 1
 Before: REAVLEY,* SKOPIL, and LEAVY, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 The Nisqually Indian Tribe appeals the district court's judgment enforcing liens filed by the law firm Cullen & Cullen for costs and attorney fees owed to the firm and to associating attorneys under a contingency contract. We affirm.
 
 1. Computation of Attorney Fees
 
 4
 The firm calculated attorney fees based on present values placed on the Tribe's settlements with the cities of Tacoma and Centralia by the settlement negotiating team. The Tribe argues that these present values were an improper basis for attorney fees.
 
 
 5
 The Tribe argues that the valuation of a recovery for the purpose of calculating attorney fees must, as a matter of law, deduct the costs of the recovery from the value of the benefits received, and that the negotiating team's present value figures do not include such deductions. Under Washington law, however, contracts for attorneys' services may provide compensation based on a percentage of the gross recovery. See Luna v. Gillingham, 57 Wash.App. 574, 789 P.2d 801, 803-805, rev. denied, 115 Wash.2d 1020, 802 P.2d 125 (1990). The question is thus one of the parties' intent under the contract.
 
 
 6
 The strongest evidence as to the parties' intent in this case is the admission of the Nisqually Business Committee in its Resolution No. 6-1990, in which it states that "the agreed $15.6 million 1987 present value of the [Tacoma] settlement entitles the attorneys to a fee award of $1.76 million." Additionally, Committee Chairman Dorian Sanchez indicated in his November 20, 1990 letter to the Tribe that attorney fees for the Centralia settlement would be $220,000. As the Tribe's net recovery under both settlements is too low to yield these amounts, these statements by the Tribe indicate that the parties intended that the attorney fees would be based on the gross recovery.
 
 
 7
 This conclusion is not precluded by a memo from the Bureau of Indian Affairs (BIA) that required that the contract term governing attorney fees be changed from "the value or the amount" to "the amount" of recovery so that the Tribe would not be liable for a percentage of a recovery that was not cash or convertible to cash. Under these settlements, the Tribe has received enough cash to cover attorney fees up to the contractual maximum. As the most probable concern underlying the BIA memo is that the Tribe might be liable for attorney fees even if it received no cash recovery out of which to pay those fees, the memo does not require an interpretation of the contract limiting the attorneys to a percentage of the net recovery.
 
 
 8
 The Tribe also argues that the present values placed on the settlements by the negotiating team should not be used for determining attorney fees because the attorneys have not given an accounting of how those values were determined. Under Washington law, attorneys must explain the basis for the calculation of contingent attorney fees. Wash. Rules of Professional Conduct 1.5(c) (1989). Because the present value figures were arrived at by economists working for Tacoma and Centralia and were allegedly inflated to serve the interests of the cities, and because the attorneys allegedly encouraged the Tribe to accept these inflated figures, the Tribe argues that the attorneys must show through an accounting that the values were in fact accurate.
 
 
 9
 However valid these arguments may have been had the attorneys simply billed the Tribe for fees based on these figures, however, here the Tribe has admitted that the figures were correct for the purpose of determining fees in its Resolution 6-1990[1] and in Sanchez's letter to the Tribe. While such admissions are not conclusive, other evidence supports the conclusion that the attorneys are entitled to fees of $2 million, as admitted in these documents. Economist Dr. Eugene Silberberg's affidavit shows that the present value of gross cash payments under the combined settlements is between $16,400,954 and $21,458,635. A review of Dr. Silberberg's analysis and of the terms of the settlements indicate that these figures are a fair estimate of the cash components of the settlements. In addition, the parties agree that the "amount of recovery" should include real estate received by the Tribe, the value of which is not included in these figures.
 
 
 10
 The contract provides that the attorneys are entitled to fees of $2 million if the Tribe's probable recovery equals a present value of at least $20 million. That amount is well within the range of probable cash and cash-convertible recovery by the Tribe, as indicated by Dr. Silberberg's affidavit. We therefore affirm the district court's holding that the attorneys are entitled to fees of $2 million, as admitted by the Tribe.
 
 
 11
 We reject the Tribe's contention that the lien should not be enforced because the attorneys allegedly committed several misdeeds over the term of this contract. As enforcement of a lien is an equitable action, the district court's holding is reviewed for abuse of discretion. See Diaz v. San Jose Unified School Dist., 861 F.2d 591, 595 (9th Cir.1988); cf. Chambers v. Nasco, Inc., 111 S.Ct. 2123, 2138 (1991) (district court decision as to attorney sanctions reviewed for abuse of discretion). A review of the record indicates that the district court did not abuse its discretion in enforcing the lien for the full amount of the attorney fees due under the contract.
 
 2. Knodel's Costs
 
 12
 The Tribe argues that because the attorneys have never given an accounting of how their fees were calculated, the Tribe cannot know if attorney Knodel's costs were deducted from the recovery before the fees were calculated, as required by the contract. The Tribe contends that the attorneys' failure to give such an accounting amounts to a waiver of the right to claim Knodel's costs.
 
 
 13
 It has been clear from the outset, however, that the fees were calculated by applying the contractual percentages to the present values of the settlements agreed on by the negotiating team. The deduction of costs from the present values does not come close to reducing the recovery to the point where the attorneys would not be entitled to the contractual maximum fees. Since an accounting would have told the Tribe nothing that it did not already know, the Tribe was not prejudiced by the lack of an accounting, and thus cannot avoid payment of Knodel's costs on that basis.
 
 
 14
 The Tribe also argues that Cullen & Cullen lacks standing to file an attorney's lien in behalf of Knodel's estate. We disagree. Nothing prohibits the firm from filing liens on the settlement money in its possession to cover all of the costs and fees of all of the attorneys who associated in the course of the litigation and who were to be compensated under the same contract. The district court thus did not err in enforcing the lien for Knodel's costs.
 
 3. Interest on the District Court Judgment
 
 15
 The district court's order includes the provision that "[a]fter the entry of judgment interest on the judgment will be calculated at the statutory rate." As both parties agree that the only interest that the firm is entitled to is interest actually earned on money in its possession, the judgment will be modified to exclude this provision.
 
 
 16
 AFFIRMED AS MODIFIED. Each side to bear its own cost for this appeal.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In most circumstances this resolution would amount to an executory accord, the terms of which the attorneys could enforce as a contractual agreement in its own right. See Perez v. Pappas, 98 Wash.2d 835, 659 P.2d 475, 478 (1983); 6 Corbin on Contracts Sec. 1312 (1951). Such an agreement cuts off defenses and arguments based on the underlying contract. See Northwest Motors, Ltd. v. James, 118 Wash.2d 294, 822 P.2d 280, 286 (1992). Although the Tribe's resolution cannot constitute an executory accord because an accord amounts to a substituted contract and would thus require approval by the BIA, see 25 U.S.C. Secs. 81, 476, as an admission it is compelling evidence that the amount agreed upon is correct. See 6 Corbin on Contracts Sec. 1308 (1951). The Tribe's argument that approval of the resolution was induced by fraud or coercion is not supported by the record