768 A.2d 299

Adrienne G. STAIR, Appellee,

v.

TURTZO, SPRY, SBROCCHI, FAUL & LABARRE,
A Professional Corporation, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Decided March 26, 2001.

Donald F. Spry, Domenic P. Sbrocchi, Bangor, for Turtzo, Spry, et al., a Prof. Corp.

Tibor R. Solymosi, William Van Scyoc, Erie, for Adrienne G. Stair.

Argued before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

### OPINION

SAYLOR, Justice.

This appeal concerns the entitlement of a law firm to retain attorneys' fees awarded pursuant to the fee-shifting provisions reposited in Title VII of the Civil Rights Act of 1964.

In 1989, Appellee, Adrienne G. Stair ("Stair"), retained Appellant, the law firm of Turtzo, Spry, Sbrocchi, Faul & Labarre, P.C. ("Turtzo, Spry"), to pursue a claim of gender discrimination against her employer. The parties entered into a fee agreement, which provided, in pertinent part:

The client(s) retain(s) the attorneys and the attorneys agree to represent the client(s) in this matter, representation to be provided through the administration hearing level. Upon completion of the administrative hearing process, the matter will be reviewed to determine whether the representation will be continued. The schedule of fees and charges, and the terms and conditions of the representation are as follows:

*LEGAL SERVICES:* A contingent fee will be charged for the legal services of the attorneys. [T]he contingent fee shall be [a] percentage of and shall apply to all of the recovery (both money and property) hereafter made in this legal matter (whether received by the client(s) or the attorney(s)), [and it] will vary with the point at which recovery is made and will be as follows:

33% of recovery made.

The agreement also contained provisions vesting Turtzo, Spry with power of attorney for Stair in relation to settlements and awards.

Turtzo, Spry sought relief on behalf of Stair in the Pennsylvania Human Relations Commission and in the Equal Employment Opportunity Commission, ultimately commencing an action in federal district court pursuant to Title VII of the Civil Rights Act of 1964 (as amended 42 U.S.C. §§ 2000e–2000e–17). Although Stair prevailed in this action, her remedy was limited to injunctive relief—the employer/defendant prevailed on Stair's claims for monetary damages. Stair, through Turtzo, Spry, then requested attorneys' fees, pursuant to the Title VII provision vesting the court with discretion to award such fees "as part of costs" to certain prevailing parties. *See* 42 U.S.C. § 2000e–5(k). The district court awarded fees in the amount of $74,040, although its order did not specifically direct that payment should be made to Stair. Apparently, the award was tendered to Turtzo, Spry, which asserted an interest in the total award.[1] Stair took the position that Turtzo, Spry's retention of the award was contrary to the fee agreement, since the statutory fee award constituted a "recovery" under its terms, and, hence, Turtzo, Spry was entitled to only one-third of the award ($23,946). Accordingly, Stair commenced the present civil action in the common pleas court to recover the balance of the award ($50,094) pursuant to the fee agreement. Turtzo, Spry filed preliminary objections in the nature of a demurrer, asserting that Stair failed to state a cause of action, since the fee agreement did not apply to attorneys' fees and costs awarded by the district court.

The trial court granted the preliminary objections, finding that Stair had failed to state a claim upon which relief could be granted. The court referenced Congress's reliance upon private enforcement to implement public policy and its provision for the award of attorneys' fees to encourage such enforce-

1. The record does not reflect whether payment was made in the name of Turtzo, Spry, or if Turtzo, Spry exercised the power of attorney pursuant to the fee agreement.

ment efforts, reasoning that permitting Stair to recover the fees awarded based upon Turtzo, Spry's efforts would frustrate the salutary legislative aim.

On appeal, the Superior Court reversed in a memorandum opinion, finding that the standard of review applicable on consideration of a grant of preliminary objections prevented it from resolving the question of whether the parties intended fee awards to constitute "recovery" subject to percentage allocation. Although the Superior Court appeared to accept that attorneys may possess some inherent interest in statutory fee awards since such awards are provided to encourage private enforcement efforts, it reasoned that neither the statute nor the decisional law precluded the parties from contractually agreeing to divide such fees along with any other recovery. The court discerned sufficient ambiguity in the agreement to preclude the dismissal of Stair's complaint for failure to state a claim. We allowed appeal to examine the differing conclusions of the trial court and the Superior Court, which are reflected in the parties' arguments before this Court.

Presently, Turtzo, Spry argues that its contingency fee agreement with Stair is wholly irrelevant to the question of its entitlement to retain the statutory fee award, but rather, the award by its nature vested in Turtzo, Spry as opposed to Stair. According to Turtzo, Spry, this conclusion is compelled by an overarching Congressional policy of ensuring the provision of actual compensation to civil rights attorneys in individual cases in order to encourage their pursuit of meritorious claims on behalf of plaintiffs who otherwise might go unrepresented. Turtzo, Spry contends that the fee agreement was by no means intended to distribute two-thirds of *its* interest to Stair. On the other hand, Stair argues that statutory fee awards vest in the plaintiff, pursuant to federal policy supporting the conferral upon such persons of the means for obtaining representation. According to Stair, federal policy does not concern itself with the allocation to the attorney of funds conferred upon the client; therefore, such allocation may

occur solely pursuant to the contractual fee agreement underlying the attorney/client relationship.

█ As noted by the Superior Court, preliminary objections in the nature of a demurrer may be sustained only in cases in which it is clear and free from doubt that the facts pleaded by the plaintiff are legally insufficient to establish a right to relief. *See Werner v. Zazyczny*, 545 Pa. 570, 578, 681 A.2d 1331, 1335 (1996). Since Turtzo, Spry's argument depends upon Congressional policy mandating a direct and exclusive attorney interest in the full amount of statutory fee awards, it can succeed at this juncture only if such a policy clearly prevails.

Particularly in decisions preceding the mid 1980's, many courts employed broad language confirming attorney interests in statutory fee awards transcending existing contractual arrangements. For example, in *Plant v. Blazer Financial Serv., Inc.*, 598 F.2d 1357 (5th Cir.1979), in holding that an award of attorneys' fees pursuant to a fee-shifting statute in a truth-in-lending action was not subject to setoff, the court emphasized the legislative purpose underlying the availability of fees, namely, to encourage the availability of effective legal representation. *See id.* at 1366.[2] In response to the argument that

2. The version of the federal truth-in-lending enactment at issue in *Plant* provided for the availability of reasonable attorneys' fees to any person to whom a creditor fails to disclose required consumer credit information and who is successful in enforcing the liability established pursuant to the enactment. *See Plant*, 598 F.2d at 1364 (quoting 15 U.S.C. § 1640 (superseded)). While the statute differs from Section 2000e–5(k) in the terms employed to accomplish fee shifting, it is materially similar to Section 2000e–5(k) both in terms of its allocation of fees to the party-in-interest in the action, and in terms of its underlying policy, noted above. Therefore, we consider the reasoning applied in *Plant* relevant.

Our discussion, below, includes a review of a number of decisions involving other fee-shifting statutes that are similarly analogous to Section 2000e–5(k). We acknowledge the need for care in such comparisons, as the language or purpose of a particular fee-shifting provision will affect its construction and, hence, the value of any analogy. The statutes underlying the decisions reviewed herein share a common focus, as they have been deemed to direct fees in favor of prevailing parties, and to have the underlying purpose of encouraging enforcement efforts. For example, many of the cases involve the Civil Rights

the provision of the statute mandating the award of fees to the plaintiff (and not to the attorney) vests ownership of the award in the plaintiff, the court indicated that this approach emphasized form over substance; reasoned that reliance upon such allocation to the detriment of attorneys practicing truth-in-lending law would undermine the purpose of the fee-shifting provisions; and determined that "the fee once awarded becomes in effect an asset of the attorney, not the client." *Id.; see also Sullivan v. Crown Paper Board Co.*, 719 F.2d 667, 669–70 (3d Cir.1983)(holding that attorneys representing plaintiffs in federal anti-discrimination cases should be permitted to obtain the amount established by their contingent fee agreement or the court-awarded fees, whichever is greater (citing *Sargeant v. Sharp*, 579 F.2d 645, 649 (1st Cir.1978))); *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir.1977)(stating, in confirming the entitlement of a legal services organization to statutory fee recovery under the Age Discrimination in Employment Act fee-shifting provisions, that "[o]f course, since the object of fee awards is not to provide a windfall to individual plaintiffs, fee awards must accrue to counsel" (citing *Hairston v. R & R Apartments*, 510 F.2d 1090, 1093 (7th Cir.1975))).[3]

Attorneys' Fee Award Act, 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in enumerated civil rights actions, and which has been deemed so similar in language and purpose to Section 2000e-5(k) as to require an identical judicial interpretation. *See, e.g., Carter v. Sedgwick County*, 929 F.2d 1501, 1506 (10th Cir.1991); *cf. Sullivan*, 719 F.2d at 669 n. 1 (noting that "[i]t has been the practice of federal courts to treat the various fee-shifting anti-discrimination statutes as governed by the same standards").

3. Decisions such as *Rodriguez* determining that statutory fees may accrue in cases in which the plaintiffs are represented by legal services organizations and *pro bono* attorneys, *see generally Alexander S. v. Boyd*, 929 F.Supp. 925, 933–34 (D.S.C.1995)(collecting cases), are materially distinguishable from the present case, since the identity of counsel is of a specialized character. Nevertheless, the decisions do not generally appear to be grounded upon a public policy distinction applicable only to legal services professionals, but rather, would seem to entail the courts' assessments concerning the general interest of attorneys in fees once awarded. *Compare, e.g., Rodriguez*, 569 F.2d at 1245, *with Sullivan*, 719 F.2d at 669–70.

Stair acknowledges such opinions, but contends that their line of reasoning has been effectively overruled by decisions of the United States Supreme Court. Indeed, the rationale applied in several of the Supreme Court's decisions would appear to militate against the interests of attorneys in statutory fee awards, primarily *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), and *Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). The pertinent reasoning from these cases merits review here, as does that provided by the Supreme Court in its intervening decision in *Blanchard v. Bergeron,* 489 U.S. 87, 92, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

In *Evans,* the Court held that a district court did not abuse its discretion in approving a class action consent decree in a civil rights case conditioned upon the waiver by the plaintiffs of any entitlement to attorneys' fees pursuant to the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. § 1988. The Court began its examination with the observation that Section 1988 expressly bestows statutory eligibility for a fee award upon the "prevailing *party," id.* at 730, 106 S.Ct. at 1539 (quoting 42 U.S.C. § 1988 (emphasis in original)), namely, the

The Ninth Circuit elaborated further on the form of reasoning applied in *Plant, Sullivan,* and *Rodriguez* in confirming that a plaintiff's request for statutory attorneys' fees in a *qui tam* action inured to the benefit of his attorneys, accounting specifically for the fact that fees accrue, in the first instance, in favor of the plaintiff:

> In this area, only the plaintiff has the power to demand that the defendant pay the fees of the plaintiff's attorney. Unless and until the plaintiff exercises that power, no one has the right to collect fees from the defendant, and the defendant has no duty to pay them. Once the power is exercised, however, the attorneys' right vests, and the defendant's duty becomes fixed. The work was done by and the fees are for the plaintiff's attorney. They must be directed to the attorney. Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money paid for their services as best they could. Left to the normal vicissitudes of life, substantial sums would be diverted from their intended purpose. Actions of the client or of the client's creditors (or heirs) would often intervene. That would not only thwart the Congressional purpose but would also make no sense at all and would lead to unconscionable results.

*U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.,* 89 F.3d 574, 578–79 (9th Cir.1996)(footnotes and citations omitted). *But see Gilbrook v. City of Westminster,* 177 F.3d 839 (9th Cir.1999).

civil rights plaintiff, as opposed to his attorneys. The Court attributed critical significance to Congress's decision to so channel eligibility, as it proceeded from this point to assess whether Congress expressly limited the prevailing party's ability to waive the eligibility (finding that it did not), *see id.* at 730–31, 106 S.Ct. at 1539, and to find substantial cause for concern that the preclusion of waivers by civil rights plaintiffs of *their* eligibility would erect potential impediments to the vindication of civil rights. *See Evans,* 475 U.S. at 732–37, 106 S.Ct. at 1540–42 (stating, *inter alia,* that it is "not implausible to anticipate that parties to a significant number of civil rights cases will refuse to settle if liability for attorney's fees remains open, thereby forcing more cases to trial, unnecessarily burdening the judicial system, and disserving civil rights litigants" (footnotes omitted)). The Supreme Court expressly considered the purpose of the fee shifting, *see id.* at 731, 106 S.Ct. at 1539 ("while it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights"), but found that the mechanism by which Congress implemented such purpose, namely, through an award to the prevailing party, opened the possibility for fee waivers in the circumstances of individual cases, *see id.* at 731–32, 106 S.Ct. at 1539–40 ("[Congress] neither bestowed fee awards upon attorneys nor rendered them nonwaivable or nonnegotiable; instead it added them to the arsenal of remedies available to combat violations of civil rights, a goal not invariably inconsistent with conditioning settlement on the merits on a waiver of statutory attorney's fees"). The Court also considered remote the possibility that the allowance of fee waivers would diminish the pool of competent attorneys willing to pursue civil rights recovery. *See id.* at 741 n. 34, 106 S.Ct. at 1545 n. 34.[4]

4. Joined by two other Justices, Mr. Justice Brennan dissented, emphasizing the Congressional purposes underlying the Fee Act (the promotion of enforcement efforts in the civil rights arena "by making it easier for victims of civil rights violations to find lawyers willing to take their cases," *id.* at 743, 106 S.Ct. at 1545–46 (Brennan, J., dissenting)), and reasoning that such enforcement will be impeded by permitting waivers of statutory fees by civil rights plaintiffs. *See id.* at 743–66, 106 S.Ct. at 1545–58.

Despite *Evans'* emphasis upon the plaintiff as the party-in-interest in relation to statutory fees, the United States Supreme Court's rationale in *Blanchard*, 489 U.S. at 92, 109 S.Ct. at 939, suggested the persistence of some interest on the part of attorneys in statutory fee awards, at least in some circumstances. In *Blanchard*, the Court concluded that statutory fees under Section 1988 are not limited to fees payable to a civil rights plaintiff's attorneys pursuant to a contingent fee agreement. *See id.* at 96, 109 S.Ct. at 946. Its analysis included the following assessment pertaining to attorneys, such as Turtzo, Spry, who have proceeded pursuant to a contingency fee agreement without express reference to statutory fees:

> If a contingent-fee agreement were to govern as a strict limitation on the award of attorney's fees, an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and short-change efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all possible avenues of relief. Section 1988 makes no distinction between actions for damages and suits for equitable relief. Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.

*Id.* at 95–96, 109 S.Ct. at 939.[5] Since *Blanchard's* reasoning relied upon the incentives *to the attorney* to pursue avenues of

5. The Supreme Court also noted its rejection of the contention that fee awards in Section 1983 damages cases should be modeled upon the contingent-fee arrangements utilized in personal injury litigation. *See id.* at 96, 109 S.Ct. at 946 (stating that "[w]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated[;][u]nlike most private litigants, a civil rights plaintiff seeks to

relief other than monetary recovery to support statutory fee recoveries in excess of fees owing to the attorney under an existing retainer agreement, its rationale clearly contemplated some benefit flowing to counsel from the fee award. Looking directly to this passage from *Blanchard*, it would seem plain that there should be some basis, other than gratuity on the part of the successful civil rights plaintiff, by which statutorily awarded fees in excess of those provided in a standard contingent fee contract would inure to the benefit of counsel.

The United States Supreme Court, however, once again afforded sharp focus upon the accrual of fees in the interest of the civil rights plaintiff and not his attorneys in *Venegas*, 495 U.S. at 82, 110 S.Ct. at 1679. There, the Court determined that a fee award pursuant to Section 1988 does not operate as a mandatory ceiling for attorney compensation; rather, attorneys may collect fees in excess of the award, for example, where a contingency fee agreement yields greater compensation. *See id.* at 90, 110 S.Ct. at 1684. In so holding, the Court reiterated the policy of fee shifting ("to enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail," *id.* at 86, 110 S.Ct. at 1682), but discerned nothing in Section 1988 or its legislative history that would regulate what plaintiffs may promise to pay their attorneys. *See id.* at 86–87, 110 S.Ct. at 1682–83 (stating that "[w]e have never held that § 1988 constrains the freedom of the civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff"). Indeed, the Court indicated, "our cases look the other way." *Id.* at 87, 110 S.Ct. at 1683. Citing initially to *Evans*, the Supreme Court stated:

> Because it is the party, rather than the lawyer, who is so eligible [to obtain the statutory fee recovery], we have consistently maintained that fees may be awarded under § 1988 even to those plaintiffs who did not need them to

vindicate important civil and constitutional rights that cannot be valued solely in monetary terms" (quoting *Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986))).

maintain their litigation, either because they were fortunate enough to be able to retain counsel on a fee-paying basis, or because they were represented free of charge by nonprofit legal aid organizations. We have therefore accepted, at least implicitly, that statutory awards of fees can coexist with private fee arrangements. And just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the party's right to waive, settle or negotiate that eligibility.

*Venegas,* 495 U.S. at 87–88, 110 S.Ct. at 1683 (citations omitted).

Significantly, the civil rights plaintiff in *Venegas* argued that, since *Blanchard* establishes that a contingent fee agreement does not impose a ceiling on the amount of a court-awarded fee flowing to the attorneys, as a rule of fairness, a fee agreement should also be disregarded for the benefit of the client such that his liability to the attorneys is limited to the amount of the statutory fee award. *See Venegas,* 495 U.S. at 88–89, 110 S.Ct. at 1683. In rejecting this argument, the Court disavowed an interpretation of *Blanchard* that would recognize an attorney interest in fee awards, stating that *Blanchard* "dealt only with what the losing defendant must pay the plaintiff, whatever might be the substance of the contract between the plaintiff and the attorney." *Id.* at 89, 110 S.Ct. at 1683. In this regard, the Court specifically reiterated that "[w]e have already rejected the argument that the entitlement to a § 1988 award belongs to the attorney rather than the client." *See id.* at 89, 110 S.Ct. at 1683.

This passage from *Venegas* is difficult to reconcile with the reasoning of *Blanchard.* Certainly, *Venegas* was correct that the *Blanchard holding* did not concern the obligations of civil rights plaintiffs to their attorneys. *Blanchard's reasoning* concerning attorney incentive, *see supra,* however, would appear to be lacking in substance if the contingent-fee attorney could expect no benefit from the statutory fee award. Nevertheless, in light of the clarification provided by the Supreme

Court in *Venegas*, the *Blanchard* reasoning cannot be read to support the attorney interest position.

The United States Supreme Court's strong emphasis upon Congress's decision to vest eligibility for the fee award in the plaintiff provides substantial support for Stair's position that, at least insofar as Congressional policy is concerned, the award belongs to the plaintiff, subject to the plaintiff's obligations under state law, for example, the law of contract as it pertains to the parties' fee agreement. Indeed, considering the Supreme Court's focus, many courts hold that the fee agreement (where one has been consummated) constitutes the sole mechanism by which an interest in statutory fees accrues to counsel, thus charging attorneys with the obligation to protect their own interests in fee agreements which clearly reflect the intended disposition of fee awards.[6] *See, e.g., Gilbrook v. City of Westminster,* 177 F.3d 839, 874 (9th Cir.1999)(limiting *Virani, supra* note 3, to *qui tam* actions and affirmatively holding that, "[i]n the absence of a contractual assignment to counsel, § 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client"); *cf. Richardson v. Penfold,* 900 F.2d 116, 117 (7th Cir.1990) (stating that, "[t]echnically, the award of attorneys' fees under 42 U.S.C. § 1988 is to the party, not to his lawyer, but it is common to make the award directly to the lawyer *where, as in this case, the lawyer's contractual entitlement is uncontested* " (emphasis in original)). Moreover, several courts have expressed the view that denying civil rights attorneys a direct payment of fee awards is consistent with Section 1988's purpose of attracting competent attorneys to represent civil rights plaintiffs, since competent counsel can protect their interest in a fee award by

6. *Venegas* presents an example of a fee agreement tailored to civil rights litigation. The agreement established a contingent fee relationship, conferred upon the attorney the right to apply for and collect any attorney fee award made by the court, prohibited the client from waiving the attorney's right to court-appointed fees, allowed the attorney's intervention to protect his interest in the fee award, and provided that any statutory fee recovery would be applied to offset the contingent fee owed. *See Venegas,* 495 U.S. at 84, 110 S.Ct. at 1681.

simply providing a clear allocation in a retainer agreement. *See, e.g., Gilbrook,* 177 F.3d at 874; *Flannery v. Prentice,* 85 Cal.Rptr.2d 95, 100 (Cal.Ct.App.1999)(citing federal decisions). *Cf. generally Hamilton v. Ford Motor Co.,* 636 F.2d 745, 748 (D.C.Cir.1980)(holding that public policy considerations require that the burden be placed on the attorney to provide for allocation of court-awarded attorneys' fees in the contingent fee agreement); *United States ex rel. John Doe I v. Pennsylvania Blue Shield,* 54 F.Supp.2d 410, 420 (M.D.Pa. 1999)("[t]hat the court should concern itself with the final recipient of the funds is not a matter addressed by the statute").

Conversely, however, the Massachusetts Supreme Court recently endorsed the rationale of pre-*Evans* federal decisions supporting a direct attorney interest in fee awards. *See Cambridge Trust Co. v. Hanify & King Prof'l Corp.,* 430 Mass. 472, 721 N.E.2d 1, 7 (1999). Like the Superior Court in the present case, the Massachusetts court had before it the common form of fee agreement allocating "recovery" between the attorney and client on a percentage basis. *See id.* The court determined that such agreements should be construed to limit the term "recovery" to monetary damages to the exclusion of statutorily awarded attorneys' fees, but that the attorneys should nevertheless receive the greater of the amount provided under the contingency fee agreement or the statutory fee award. *Id.* at 7–8 (citing *Sullivan,* 719 F.2d at 670). The court found that its interpretation was consistent with the Congressional policy of fostering enforcement efforts; prevented unfair surprise to plaintiffs by precluding their attorneys from obtaining overlapping or double recovery unless expressly provided; and harmonized with settled principles of contract interpretation, in that it entailed a construction of ambiguous language against its drafter. *See Cambridge Trust,* 721 N.E.2d at 7–8.[7]

7. The Massachusetts court deemed its construction to be against the interests of contingent-fee attorneys in that it precluded them from obtaining overlapping recoveries (aggregating monetary damages and statutory attorneys' fees for purposes of percentage allocation) or double recoveries (obtaining both a contingent fee recovery and the statuto-

At a central point in its analysis, the *Cambridge Trust* court also indicated that the United States Supreme Court followed its approach in *Venegas.* *See Cambridge Trust,* 721 N.E.2d at 7. It is true that in *Venegas* the Supreme Court endorsed, in the circumstances, the payment of the higher amount as between a statutory fee award and a contingency fee agreement; however, the parties' contractual agreement resulted in the higher payment in that case. *See Venegas,* 495 U.S. at 85, 110 S.Ct. at 1681. Moreover, as previously noted, the agreement at issue in *Venegas* was not a standard contingency fee agreement, but rather, conferred substantial rights upon the attorneys in relation to any fee award, including the right to apply for and collect the award and a right of intervention to protect such interest. *See supra* note 6. Therefore, the present paradigm involving a standard contingency fee agreement that does not expressly anticipate statutory fees simply was not before the Supreme Court. Further, nowhere in *Venegas* does the United States Supreme Court endorse a policy of ensuring, in such situations, that attorneys should receive the greater of the amount provided under a standard contingency fee agreement or the statutory fee award in the absence of a contractual agreement creating an attorney interest. In fact, much of the rationale provided by the Supreme Court suggests the contrary.

In summary, we recognize that the holdings in *Evans* and *Venegas* do not directly answer the question of interest in statutory fee recovery as between the lawyer and client—that a civil rights plaintiff may waive eligibility for fees (*Evans* ), or promise to pay more than the statutory fee award (*Venegas* ), does not directly determine the nature of the plaintiff's inter-

ry fee award) in absence of an express agreement. *See Cambridge Trust,* 721 N.E.2d at 7–8. Dictum from *Cambridge Trust* suggests that such arrangements may be permissible where attorneys and their clients expressly so agree. Interestingly, however, the court took care to emphasize that, although its discussion provided a framework for accommodating contingent fee agreements in cases where attorneys' fees are awarded by the court, it was not intended to foreclose further consideration of the topic, particularly by its standing advisory committee on the rules of professional conduct. *See Cambridge Trust,* 721 N.E.2d at 8.

est vis-à-vis his attorneys once such fees have accrued. However, the reasoning applied in such decisions undermines Turtzo, Spry's position that a clear Congressional policy requires that civil rights attorneys must always receive the direct and entire benefit of statutory fee awards in individual cases. Indeed, even those courts that have attempted to justify the preservation of a direct attorney interest in statutory fee awards have had substantial difficulty articulating a basis grounded in federal policy in light of *Evans* and *Venegas.* *See, e.g., Cambridge Trust,* 721 N.E.2d at 7. While, left to our own devices, our own interpretation of Congressional purpose might have been considerably different, *see Blanchard,* 489 U.S. at 95–96, 109 S.Ct. at 939; *supra* notes 3–4, it is appropriate to defer to the United States Supreme Court concerning the direction of prevailing federal policy.

▋ In view of the above, it is apparent that Turtzo, Spry has failed to demonstrate a clear federal policy confirming its exclusive interest in the statutory fee award. Therefore, it is not free and clear from doubt that Stair has failed to state a claim upon which relief can be granted in alleging that Turtzo, Spry holds a fee award which belongs to her and cannot retain that portion which is in excess of what she is willing to concede should flow to Turtzo, Spry under the provisions of the parties' fee contract. Accordingly, the Superior Court did not err in reversing the grant of preliminary objections. *See Werner,* 545 Pa. at 578, 681 A.2d at 1335.

Although we have determined that federal policy does not bar Stair's claim, we do not here foreclose the possibility that the design of the federal fee-shifting scheme in issue may be relevant to the ultimate resolution of this case upon further consideration of the complaint as well as responsive defenses and claims that may be asserted by Turtzo, Spry.[8] Nor do we

8. For example, pursuant to that scheme, the fees awarded were calculated based upon Turtzo, Spry's efforts, *see generally Venegas,* 495 U.S. at 87, 110 S.Ct. at 1682 (referencing utilization of the lodestar model of hours reasonably expended compensated at reasonable rates in calculating fee awards), which may have relevance in the context of state law claims and defenses. Additionally, courts construing Section 2000e–5(k) and similar fee-shifting statutes have incorporated a general re-

undertake to resolve the dispute concerning the proper construction of the term "recovery" as employed in the parties' fee agreement, since Turtzo, Spry has failed to demonstrate an initial interest in the award of such character that its own interpretation (that the term "recovery" does not include statutory fees) would establish a right to relief on the preliminary objections.[9]

Finally, we express no opinion as to the appropriate manner in which attorneys may proceed to collect statutory fees that have been awarded to their clients, since Stair's complaint does not raise a challenge in this regard.[10] Again, we merely emphasize the value of a clear and specific agreement at the outset of any professional representation. *See generally* Pennsylvania Rule of Professional Conduct 1.5(b)(directing that when attorneys have not regularly represented the client, "the basis or rate of the fee shall be communicated to the

quirement that fees must have been "incurred," although this element often has been loosely defined to accommodate the range of arrangements for legal representation confronted by federal courts. *Compare Polselli v. Nationwide Mut. Fire Ins. Co.*, 1993 WL 479050 (E.D.Pa. Nov.12, 1993)(stating that "[t]he assessment of attorney fees is not contingent on the prevailing party's obligation to pay the attorney" (citations omitted)), *with Ed A. Wilson, Inc. v. General Serv. Admin.*, 126 F.3d 1406, 1409 (Fed.Cir.1997)(suggesting that, in order for an award to properly accrue, "[t]here must be an express or implied agreement ... that the fee award will be paid to the legal representative").

9. We do note that most courts have rejected the position espoused by Turtzo, Spry that the term "recovery" as used in a standard contingency fee agreement would clearly exclude a statutory fee award, instead finding the term ambiguous on this question. *See, e.g., Cambridge Trust*, 721 N.E.2d at 7 (stating that "[t]he real question is how court-awarded attorney's fees should be allocated when a contingent fee agreement has been executed that is either ambiguous or silent on the matter [of whether fees are to be allocated on a percentage basis with other monetary recovery]"); *Luna v. Gillingham*, 57 Wash.App. 574, 789 P.2d 801, 804 (1990)(deeming the term "gross recovery" as used in a contingent fee agreement ambiguous, thus leaving unresolved the question of how court-awarded attorneys' fees should be allocated).

10. Here, it appears that Turtzo, Spry may have proceeded pursuant to the power of attorney contained in its fee agreement. Parenthetically, reliance upon such provision, at least as concerns fees based upon pursuit of the action in federal district court, would appear to be inconsistent with suggestions gingerly interspersed throughout Turtzo, Spry's brief that the fee agreement was limited to representation at the administrative level.

client, in writing, before or within a reasonable time after commencing the representation").

For the foregoing reasons, the order of the Superior Court is affirmed.