**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFREY R. RADLIFF, Personal Representative of the Estate of Eileen A. Royster,<br><br>    Respondent,<br>        v.<br><br>PAUL SCHMIDT, Personal Representative of the Estate of Herbert John Royster,<br>    Appellant,<br><br>KARIM FANG, an individual; YASMINE FARAG, an individual; MARY WENTZ, an individual; TONI HAMERQUEST, an individual; CAROL BERG, an individual; CHURCH OF THE NAZARENE; CHARLES and LUANNE SUPER, individuals; CONNIE WALLACE, an individual; JOHN and JUDY SWENS, individuals; SANDY NEWTON, an individual; KRIS KURAHARA, an individual; SUZI DESILVA, an individual; BETTY and DARREL JOHNSON, individuals; CATHY ERLAND, an individual; TOM EDWARDS , an individual; MADELINE MIKAYLA ERICKSON, an individual; USS EARNEST G. SMALL ASSN.; MARY MARTHA ZEHAN, an individual; DANA BENJAMIN, an individual; SHRINERS HOSPITAL FOR CHILDREN; OREGON STATE POLICE OFFICERS ASSN.; DAUGHTERS OF THE AMERICAN REVOLUTION; HOOD RIVER VALLEY CHRISTIAN CHURCH; JOY IN NICARAGUA ; CAROL BUTLER, an individual; CHARLES JAMES and PATRICIA HOLLAND, individuals, EDWARD ERLAND, an individual; | No. 85041-5-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

No. 85041-5-I/2

| BRITT and NOAH RICCI, individuals; DAILY WORD/GUIDEPOST; HUONG XUAN NGUYEN, an individual; AUDREY VEDAA, an individual; JEANNIE BENJAMIN, an individual; PAUL SCHMIDT, an individual; LARRY and DENISE YADON, individuals, |
| :--- |
| Defendants. |

DíAZ, J. — Herbert Royster and Eileen Royster,[1] who were husband and wife, each executed wills in Oregon. After the Roysters moved to Washington, they entered into a community property agreement (CPA) making all property community property. The survivorship provisions in their wills, however, were different than the survivorship provision in the CPA, in that the wills specified that a spouse had to survive the other by four months to inherit, while the CPA specified the survivor period was only 30 days. Herbert died 75 days after Eileen, which appeared to mean that their son Jeffrey Radliff, under Herbert's will, would inherit almost nothing if the CPA controlled, but would inherit a significant portion of Eileen's estate if her will controlled. The trial court found an irreconcilable conflict between the wills and CPA's survivorship clauses, and ruled in favor of Radliff based on extrinsic evidence. Paul Schmidt, as personal representative of Herbert's estate, appealed.

We hold that the documents may be construed to avoid conflict and, thus, we reverse and remand this case to the trial court to enter judgment in favor of Schmidt.

---

[1] Because Herbert Royster and Eileen Royster share a surname, we refer to them by their first names for clarity. No disrespect is intended.

## I.     FACTUAL BACKGROUND

Radliff is the sole surviving son of Eileen, the step-son of Herbert, and the personal representative of Eileen's estate.

In 2010, Eileen and Herbert each executed similar last will and testaments ("will" or together "wills") in Oregon.  The wills provided for gifts of certain real and personal property to family members, and dictated that the residue of each estate would pass (at least in part) to their respective spouse if he or she survived them; otherwise, the residue of both estates would pass (at least in part) to Radliff. Similarly, the wills nominated the surviving spouse to act as personal representative, and both named Radliff as the successor personal representative. The survivorship provision of both wills set the survivorship period as four months.[2]

After relocating to Washington at some point, on April 10, 2018, the couple executed two sets of documents simultaneously: codicils on their wills and a CPA.

Both codicils changed the governing law to Washington, but otherwise provided that their wills would remain "in full force and effect."

The CPA made all property then "owned or hereafter acquired by" the two of them community property and stated that, upon the death of one spouse, all the property would vest in the surviving spouse.  The survivorship provision of the CPA

---

[2] Specifically, paragraph 5.1 of each will stated, "If any beneficiary named or described in this Will dies within four (4) months after my death, all the provisions in this Will for the benefit of such deceased beneficiary shall lapse, and this Will shall be construed as though he or she predeceased me."

No. 85041-5-I/4

set the survivorship period as 30 days.[3]

The CPA also contains the following provision:

4. DISCLAIMER. Upon the death of either Husband or Wife, the surviving spouse may disclaim any interest passing under this Agreement in whole or in part, and the interest disclaimed shall pass under the terms and conditions of any validly executed Will which the decedent may have executed or in default thereof, according to the laws of intestacy as governed by the statutes of the State of Washington then in effect.

Eileen passed away on July 15, 2019. Shortly thereafter, Herbert executed a new will to designate the residue of his estate to numerous individuals and organizations, leaving only $1,000 of his estate to Radliff.

Herbert passed away on September 28, 2019, 75 days after Eileen's death, which is more than 30 days but less than four months.

In November 2019, Schmidt petitioned the court to admit Herbert's revised will to probate. Radliff petitioned under the Trust and Estate Dispute Resolution Act ("TEDRA"), chapter 11.96A RCW, to resolve the alleged conflict between the survivorship provisions of Eileen's will and the survivorship provision in the CPA.

On March 11, 2022, in a hearing on the petition, the trial judge heard oral argument but took no testimony. In the hearing, Radliff stated, "there's only one issue the Court needs to resolve today, and that is whether there is a conflict between the survivorship provision of Eileen's will and a survivorship provision in the community property agreement."

---

[3] Specifically, paragraph 8 of the CPA stated, "As used herein, the term 'survivor,' 'survive,' or 'survivorship' shall mean living for a period of thirty (30) days following the death of the first of the Husband and Wife to die."

4

On April 20, 2022, the trial court found the conflict created a patent ambiguity between the documents and required the admission of extrinsic evidence to determine Eileen's intent in signing each document. In a written order following this hearing, the trial court ruled in favor of Radliff and awarded his attorneys fees under RCW 11.96A.150(1) totaling $40,366.25, and costs in the amount of $1,570.42.

Schmidt timely appealed.

II.    ANALYSIS

A. Whether an Ambiguity Exists Between the Wills and the CPA

1. Law

"The purpose of contract interpretation is to ascertain the intent of the parties." Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). Our courts follow the "objective manifestation theory" of contracts, wherein the parties's intent is determined by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). The ultimate goal is to determine the parties' intent at the time they executed the contract rather than "the interpretations the parties are advocating at the time of the litigation." Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 282, 313 P.3d 395 (2013).

"Clear and unambiguous contracts are enforced as written." Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d 970 (2010). Ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole.

5

Green River Valley Found., Inc. v. Foster, 78 Wn.2d 245, 249, 473 P.2d 844 (1970). " '[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.' " Lui v. Essex Ins. Co., 185 Wn.2d 703, 712, 375 P.3d 596 (2016) (alteration in original) (quoting Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005)). When contract provisions conflict, we will harmonize them to the extent possible. Id. at 710. The courts give "words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Hearst Commc'ns, 154 Wn.2d at 504.

Language in a contract is ambiguous if it is susceptible to two different but reasonable interpretations or where separate contractual provisions irreconcilably conflict. Luna v. Gillingham, 57 Wn. App. 574, 579, 789 P.2d 801 (1990); Haney v. State Farm Ins. Co., 52 Wn. App. 395, 397, 760 P.2d 950 (1988) (ambiguity exists where separate contract clauses create an "inherent contradiction"). An ambiguity is "patent" when it appears on the face of a document, whereas a "latent" ambiguity is one that becomes apparent when the instrument's provisions are sought to be applied. See Carney v. Johnson, 70 Wn.2d 193, 195, 422 P.2d 486 (1967).

A community property agreement is a contract subject to the general rules of contract interpretation. In re Dunn's Estate, 31 Wn.2d 512, 526, 197 P.2d 606 (1948). Similarly, as to wills, the "paramount duty of the court is to give effect to the testator's intent when the will was executed." In re Estate of Little, 9 Wn. App.

6

2d 262, 275, 444 P.3d 23 (2019). The court must determine the intent from the language of the will as a whole. Little, 9 Wn. App. 2d at 275.

We review the trial court's conclusions of law pertaining to contract interpretation de novo. Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). The interpretation of a will is also a question of law and reviewed de novo. Little, 9 Wn. App. 2d at 275. We review a document's purported ambiguity de novo as a question of law. In re 1934 Deed to Camp Kilworth, 149 Wn. App. 82, 86, 201 P.3d 416 (2009).

2. Discussion

a. The Wahl Case

Radliff relies heavily on our Supreme Court's decision in In re Estates of Wahl, 99 Wn.2d 828, 664 P.2d 1250 (1983). Radliff argues that, per Wahl, we must read Eileen's will and the CPA together and, when we do so, we should discover that a patent ambiguity exists, which means we must resort to extrinsic evidence to determine the intent of the documents.

In Wahl, a married couple each executed a will to bequeath their respective estate to the other spouse, provided that spouse survived the other by at least 90 days. Id. at 829. In the event either party did not survive the other, their estate would go to different people. Id. Later, the couple executed a CPA, indicating that title to all community property would immediately vest in the surviving spouse upon the death of the other spouse. Id. On the same day, the couple also executed codicils in which they expressly reaffirmed all the provisions of their respective previous wills. Id. Several years later, the wife died first and the husband died

7

fewer than 90 days later, which again was the period defined in the survivorship provision in the wills. Id. at 829-30. The trial court granted summary judgment in favor of the wife. Id. at 830. This court reversed, finding a question of fact as to the intent of the decedents. Id.

Our Supreme Court first reaffirmed the proposition that "[d]ocuments executed together . . . are to be construed together." Id. at 831 (citing Maxwell's Elec., Inc. v. Hegeman-Harris Co. of Canada, 18 Wn. App. 358, 367, 567 P.2d 1149 (1977), abrogated on other grounds by Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 700, 756 P.2d 717 (1988)). Our Supreme Court then stated that "the inconsistency between the wills and the community property agreement creates an ambiguity which requires the admission of extrinsic evidence to ascertain the intent of the parties." Id.

Up to this point, this case appears on first blush to be on all fours with Wahl. In both cases, the parties executed wills with survivorship provisions that are different than later executed CPAs. In both cases, the spouses executed codicils to their wills that made clear they did not wish to disturb the remaining portions of their wills. Furthermore, in both cases, one spouse died before the expiration of the survivorship provision in the wills after the death of the other. In both cases, those different terms would appear to have a material impact on who would inherit.

However, there are two key distinguishing features between this case and Wahl. First, in Wahl, the procedural posture is different than that presented here. Our Supreme Court there was considering whether the trial court erred in granting summary judgment and, specifically, whether there was "a question of fact as to

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

whether the Wahls were mistaken as to the effect of the language of the community property agreement." Id. at 831. After reviewing the evidence before the trial court, our Supreme Court held that there was "enough evidence in the record for a trier of fact to conclude Neal and Rose Wahl were mutually mistaken as to their rights to inherit under their wills and codicils, as they were not advised of the legal effect of the community property agreement executed the same day." Id. at 832. That was its central holding. Thus, the Court "affirm[ed] the Court of Appeals' reversal of the trial court's summary judgment and remand[ed] for determination of all questions of fact, and application of the law in accordance with the provisions of [its] opinion." Id.

In other words, the Wahl court did not rule that the differing survivorship provisions in the CPA and the wills create an ambiguity *as a matter of law*. Instead, the Court was singularly focused on whether there was "no genuine issue as to any material fact" as to the parties's intent, and specifically whether they were mistaken, when they executed those two competing documents. CR 56(c). Thus, Wahl does not stand for the proposition that, where any two documents executed together contain different survivorship provisions, a patent ambiguity has been created as a matter of law. That was simply not before the Court.

As such, we will continue to work through our general rules of contract interpretation, including that an ambiguity should not be read into a contract where it can reasonably be avoided by reading the contract(s) as a whole. Green River, 78 Wn.2d at 249.

9

No. 85041-5-I/10

That principle leads us to the second distinguishing factor, which relates to a provision not found, or at least not discussed, in Wahl.

b. The Disclaimer Provision[4]

Here, unlike Wahl, the CPA has a disclaimer provision that states that, upon the death of one spouse, the surviving spouse may disclaim any interest passing under the CPA and "the interest disclaimed shall pass under the terms and conditions of any validly executed Will which the decedent may have executed." In other words, the surviving spouse (i.e., one who survives the other by at least 30 days) may unilaterally reject the benefit of the CPA, at which time the will of the decedent spouse will kick in, including its four-month survivorship provision.

When read in this way, no inherent conflict exists between the survivorship provision of the CPA and the survivorship provision of the wills. Under the disclaimer provision, each survivorship provision applies to a different set of facts, depending on whether the surviving spouse decides to accept the benefits of the CPA or disclaim those benefits and let the will control.

This holding is consistent with case law interpreting the community property agreement statute, RCW 26.16.120, which "enables husbands and wives to enter into community property agreements concerning the status and disposition of their

---

[4] Schmidt attempts to harmonize the survivorship provisions by applying the 30-day survivorship provisions to Herbert's will and the four-month survivorship provisions to any and all potential beneficiaries in Eileen's will. This approach ignores the fact that Herbert is a beneficiary in Eileen's Will because he will inherit the residue of her estate if he survives her. The distinction collapses under its own weight.

10

property to take effect upon the death of either." In re Wittman's Estate, 58 Wn.2d 841, 843, 365 P.2d 17 (1961). Our Supreme Court held that:

> [S]uch enforceable contracts are not wills and are not governed by the laws relating to wills. They are completely executed when one of the parties to the recorded contract dies. Title to the community property, thereupon, vests as the sole and separate property of the survivor. Unless such a recorded contract is rescinded by the parties, it constitutes a conveyance by the decedent to a surviving spouse. The property covered by it cannot be devised or bequeathed by will by either spouse while it remains in effect.

Wittman, 58 Wn.2d at 843-44; see also In re Estate of Catto, 88 Wn. App. 522, 527, 944 P.2d 1052 (1997) (same). While the sequencing of wills and CPA may be inverse in those matters, our interpretation of this CPA and will does not disturb those essential holdings.

In short, we conclude that no patent or irreconcilable ambiguity exists between the survivorship provisions of the CPA and the wills, when both are read through the disclaimer provision in the CPA. Hearst Commc'ns, 154 Wn.2d at 503; Green River, 78 Wn. 2d at 249.

Finally, this interpretation of the CPA and the wills has the benefit of adhering to another general rule of contract interpretation, namely, that "[i]nterpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective." Grey, 158 Wn. App. at 850. Each of the interpretations provided by the parties rendered one of the survivorship provisions or the disclaimer provision meaningless. Such interpretations are unsatisfying and ultimately to be avoided if possible.

11

No. 85041-5-I/12

B. Attorneys Fees

1. Additional Factual Background

At the initial hearing on Radliff's TEDRA petition,[5] the trial judge stated that the matter was

> [v]ery complex. Well, we have Ping-Pong. These are the kind of cases where there's a Ping-Pong. If you go one direction, then it goes the other way. So you can go either — just depends on the direction of the ambiguity, whether ambiguity exists.

And, in assessing whether an ambiguity existed between the CPA and the wills, the trial court laid out the fact pattern of this case in a way that made it appear very similar to that in Wahl. That was quite understandable. After giving the parties the opportunity to mediate the matter further, the court then reviewed the extrinsic evidence it found pertinent in finding for Radliff.

In its order awarding attorneys fees, the trial court further found that the litigation conferred a substantial benefit on the Estate of Eileen Royster. Finally, in calculating the attorneys fees award, the court used the lodestar method.

2. Law

TEDRA grants trial courts remarkably broad discretion to award any party its reasonable attorney fees or costs. See RCW 11.96A.150(1). Fees may be awarded to any party "in such amount and in such manner as the court determines to be equitable." Id. In exercising its discretion, the court "*may* consider any and

---

[5] An initial hearing on a TEDRA petition "must be a hearing on the merits to resolve all issues of fact and all issues of law" unless "requested otherwise by a party in a petition or answer." RCW 11.96A.100(8). Here, there was no request in the petition(s) or answer for the initial hearing to be anything other than a hearing on the merits.

12

all factors that it deems to be relevant and appropriate, which factors *may* but need not include whether the litigation benefits the estate or trust involved." Id. (emphasis added). The court may also consider whether the litigation presents novel or unique questions or issues of first impression. In re Estate of Stover, 178 Wn. App. 550, 564, 315 P.3d 579 (2013).

The trial court's award of attorney fees under RCW 11.96A.150 is reviewed for abuse of discretion. In re Guardianship of Matthews, 156 Wn. App. 201, 212, 232 P.3d 1140 (2010).

3. Discussion

We hold that the court did not abuse its discretion in finding that the litigation benefitted the Eileen's estate (even if it is no longer the prevailing party) or by awarding Radliff his attorneys fees in this matter. The matter certainly brought unique questions of law, which benefitted not just Eileen's estate, but the parties to the extent the full airing of the intent of the decedent's was fully explored, litigated, and resolved in one action. See RCW 11.96A.150(1)

Finally, as the prevailing party in the appeal, we also award Schmidt his reasonable attorney fees and costs incurred in bringing this appeal. See Stover, 178 Wn. App. at 564; RAP 18.1.

III.    CONCLUSION

We reverse and remand this case to the trial court to enter judgment in favor of Schmidt, while affirming the attorney fees and costs awarded by the trial court to Radliff, which will be paid by the Estate of Herbert Royster. We further award reasonable attorney fees and costs incurred on this appeal to Schmidt, which shall

13

No. 85041-5-I/14

be paid by the Estate of Eileen Royster. Under RAP 18.1(f), the commissioner or clerk will determine the amount of the award, and will notify the parties of the award, after the parties follow the procedure laid out therein.

_Díaz, J._

WE CONCUR:

_Smith, C.J._          _Mann, J._

14