IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>IRVIN N. STROM.<br><br>—————————————<br><br>MARY M. PARCHER and ROBERT PARCHER,<br><br>     Appellants,<br><br>  v.<br><br>ESTATE OF IRVIN STROM,<br><br>     Respondent. | No. 84489-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — A trial court awarded the estate of Irvin Strom, who died intestate, an 89% ownership interest in his home in Sultan ("the Property"). He owned this home with his daughter and her husband (the "Parchers"), who, following the division, retained the remaining 11% interest. The Parchers appeal, arguing the trial court improperly weighed the evidence and committed procedural errors. Consistent with the discretion we afford trial courts in these proceedings, we affirm.

## I. BACKGROUND

In early 2020, Strom, his daughter, Mary Parcher, and her husband, Robert Parcher, bought the Sultan property. The Property included one developed lot with a house and an outbuilding. Strom and the Parchers purchased the property for $499,950.

Closing documents show that Strom and the Parchers made a down payment of approximately $50,000. $5,000 came from Strom Auto Sales, and approximately $45,000 from the Parchers. However, the day before, Strom wired approximately $45,000 to the Parchers from his Umpqua bank account. The intent of that transfer will be discussed further below.

According to Strom, the Parchers and he each agreed to pay half of the monthly mortgage payment. Strom claimed, that, in July 2020, he discovered that, while they collected his monthly mortgage payment, the Parchers were not paying the mortgage because they had received a COVID-19 related deferral. Strom claimed the Parchers did not notify him that they had chosen to defer paying the mortgage. Strom demanded they return the monthly mortgage payments he gave them, and alleged they refused.

The Parchers disputed Strom's telling. In short, the relationship between Strom and the Parchers devolved to the point that Mary Parcher obtained a protection order against Strom. During that time, Strom lived in the outbuilding. He moved elsewhere in 2021, and passed away six months later intestate.

The court appointed a personal representative to resolve the ownership interests of the estate. The representative filed the present action to determine the

ownership interests in the Sultan property.

Following a hearing in August 2022, the superior court issued an order and letter memorandum, which awarded the estate of Strom an 89.38% interest in the property and the marital community of the Parchers an 10.62% interest ("order").[1] The court also approved fees for the personal representative from Strom's estate. The Parchers appeal, pro se.

## II.    DISCUSSION

The Parchers assert approximately 10 assignments of error.    To summarize, they argue (A) the trial court did not support its findings of fact and conclusions of law with substantial evidence; (B) the trial court erred by considering certain evidence; (C) the trial court erred as a matter of law when it found the Parchers were tenants in common; and (D) the trial court erred by granting attorney fees and costs to the estate of Strom's personal representative.  For its part, the estate seeks attorney fees on appeal.  We address each in turn.

A.    Substantial Evidence

The Parchers assign error to several portions of the trial court's order and generally posit that the trial court unfairly discounted the evidence before it, or unfairly weighed the evidence against the Parchers.  We conclude the trial court supported its order with substantial evidence.

---

[1] This hearing was the initial hearing, at which the parties appeared and at which "[t]he Court received and considered the arguments and testimony."  The statute mandates that the initial hearing on a petition "must be a hearing on the merits to resolve all issues of fact and all issues of law" unless "requested otherwise by a party."  RCW 11.96A.100(8).

"[W]here competing documentary evidence must be weighed and issues of credibility resolved, the substantial evidence standard is appropriate." Dolan v. King County, 172 Wn.2d 299, 310, 258 P.3d 20 (2011). Appellate courts defer to trial courts on a sliding scale based on how much assessment of credibility is required. Dolan, 172 Wn.2d at 311. The substantial evidence standard is "more appropriate, even if the credibility of witnesses is not specifically at issue," when the trial court must review and weigh significant documentary evidence, "resolve[] inevitable evidentiary conflicts and discrepancies, and issue[] statutorily mandated written findings." Id. "Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding." In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

In its August 26 order, the trial court noted that it reviewed and weighed several documents when it determined the respective ownership interests in the Sultan property, including declarations from the parties, financial records, a memorandum from the personal representative, and the relevant instruments for the Sultan property. The record was replete with "evidentiary conflicts and discrepancies," all of which the trial court had to resolve with at least some "assessment of credibility." Dolan, 172 Wn.2d at 311. Thus, the substantial evidence standard is appropriate here.

With the above standard in mind, it is also important to preliminarily note that we hold pro se litigants to the same rules of procedure and substantive law as we do licensed attorneys. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006). An appellant's brief must contain "argument in support of

4

the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

First, the Parchers argue the trial court "erroneously attributed" the mortgage payment solely to Strom and "false[ly]" credited Strom for mortgage payments thereafter, when it "came up with" its finding that the estate had an approximate 89% interest in the property and the Parchers approximately 11%.

It is undisputed the down payment totaled approximately $50,000. The estate claims Strom contributed the entire amount, $5,000 from his auto shop (as earnest money), and approximately $45,000 through the Parchers "to satisfy a request from" a lending agent. Either before the trial court or on appeal, the Parchers claim the court misunderstood their contribution to the down payment, claiming variously the $45,000 was a gift, or repayment for their "active[] involve[ment] with the automobile sales business," or represented "moneys [sic.] owed to them by Strom."

After reviewing the Parchers' declarations, the trial court found that it was not "credible" that Strom intended to transfer $50,000 to the Parchers "as compensation" for their contributions to the business. Indeed, the trial court found that the Parchers had "fabricated or embellished [their financial interest in the property] in an effort to enhance their [claim to] the Sultan property." The trial court specifically noted that the Parchers claimed that only the $5,000 was a gift or compensation, and provided no evidence in support of the claim that the remaining 90% ($45,000) of the deposit was a gift or compensation.

5

As to the mortgage payments thereafter, the trial court found that, after the parties signed the loan note in January 2020, the Parchers paid half the mortgage for four months, and Strom paid the other half for six months, by Strom transferring his half to the Parchers, who, in turn, were supposed to pay the lender. Between January and July 2020, the trial court found that Strom paid $9,600 and the Parchers $6,400 as mortgage payments.[2] The trial court supported these findings with specific reference to Strom's declarations, which were filed both in this case and in a separate action.[3]

The total investment in the property was approximately $66,000, comprised of the approximately $50,000 down payment, $12,800 in full mortgage payments, and the $3,200 Strom contributed for half of two mortgage payments. Further, Strom contributed approximately $60,000 of the $66,000 total investment in the property, which is approximately 90% of the investment. In turn, per Cummings v. Anderson, 94 Wn.2d 135, 144, 614 P.2d 1283 (1980), the trial court awarded Strom a proportional interest in the property, namely 89.38%. The Parchers do not contest the applicability of Cummings.

In short, the trial court reviewed declarations from the respective family members, available documentation, the petition and memorandum from the

---

[2] The monthly mortgage payment was approximately $3200. Strom's contribution (of $9600) is calculated simply by multiplying half the mortgage payment ($1,600) by six months. The Parchers' contribution (of $6,400) is calculated by multiplying half the mortgage by four months.

[3] The Parchers also argue the trial court misstated the date of Strom's death and applied improper dates to the first mortgage statements. However, they do not explain what legal effect they believe these scrivener's error have, nor do they support this argument with reference to the record or legal authority. Thus, we decline to consider it. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

personal representative.  And, the trial court was best positioned to weigh the various parties' credibility, and it supported its calculation of ownership with specific references to the record.  Thus, it was not an abuse of discretion for the court to divide the property in the way it did.  Such facts are enough to persuade a reasonable person that the trial court did not err in finding Strom had an 89% ownership interest.  Estate of Jones, 152 Wn.2d at 8.

Second, the Parchers argue that the trial court improperly discounted their family members' statements, which allegedly corroborated their testimony.  The trial court reviewed declarations from Strom's two other adult daughters, which offered contradictory testimony about whether Strom intended to leave the property to the Parchers.  For example, one of the daughters, Denise Hadelman, stated that her other sisters were actually estranged from Strom, and he did not intend to leave them the Sultan property.  Again, given the procedural posture of this matter, the trial court was in the best position to review the evidence and determine credibility of the witnesses.  "We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility."  In Re: Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).  A reasonable factfinder would find the same, thus, substantial evidence supports this finding.

Third, the Parchers argue that the trial court improperly inferred that they willfully failed to disclose that they had applied for a COVID-19 mortgage forbearance, and that it disregarded testimony to the contrary.  Indeed, the trial court found that, based on his own declaration, Strom discovered the Parchers stopped paying their half of the mortgage by speaking with his mortgage lender.

In rebuttal, the Parchers offered only their own declarations and that of another sibling, neither of which provided further factual support. In short, the trial court was confronted with competing contradictory declarations.

As we previously discussed, in this procedural posture, the trial court is best positioned to evaluate the truthfulness and credibility of a declarant's statements. See, e.g., Greene, 97 Wn. App. at 714; Dolan, 172 Wn.2d at 310. Sworn statements in Strom's declaration constitute substantial evidence to persuade a reasonable finder of fact that the evidence is true. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Id. at 879-880. We conclude substantial evidence supports the trial court's finding.

Fourth, the Parchers contend the trial court improperly discounted their alleged material improvements to the property. The Parchers argue that the trial court omitted that they spent $4,000 to remove "danger trees" that allegedly fell on a neighbor's car and home. However, the Parchers fail to explain how removing a tree *from a neighbor's property* improved the Sultan property's value. They merely provide a copy of a receipt for $4,000 from February 27, 2022. The trial court reasonably supported its finding to the contrary with substantial evidence.

B.    Procedural Errors

"[The Trust and Estate Dispute Resolution Act ("TEDRA")] gives the trial court 'full and ample power and authority' to administer and settle all estate and trust matters, RCW 11.96A.020(1), 'all to the end that the matters be expeditiously

administered and settled by the court.'" In re Estate of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012) (citing RCW 11.96A.020(2)). We review discovery decisions by a trial court in a TEDRA proceeding for an abuse of discretion. Id. at 447-448. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The Parchers assign error to two evidentiary decisions by the trial court. They argue the trial court erred in considering the statement of Denise Halderman because it was allegedly submitted late and contained hearsay and falsehoods. They also argue that the superior court improperly considered Strom's statement from the DVPO hearing in its TEDRA proceedings.

Again, the superior court has broad discretion to decide evidentiary and procedural matters. Estate of Fitzgerald, 172. Wn. App. at 447-448. Additionally, the Parchers do not assign an error of law or procedure to these decisions, rather, they say the trial court judge violated rules, without saying which rules were violated. We reiterate that we hold pro se appellants to the same standard we do licensed attorneys. Holder, 136 Wn. App. at 106. And when the parties do not cite to caselaw or the record, we are not required to search the record for such. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered) (citing RAP 10.3(a)(6)). Thus, we conclude the trial court did not err by admitting either statement.

C.      Legal Errors

9

"'In a true joint tenancy, each of the tenants has an undivided interest in the whole, and not the whole of an undivided interest.'" Walsh v. Reynolds, 183 Wn. App. 830, 854, 335 P.3d 984 (2014) (quoting Merrick v. Peterson, 25 Wn. App. 248, 258, 606 P.2d 700 (1980)). "Joint tenancy shall be created *only by written instrument*, which instrument *shall expressly declare* the interest created to be a joint tenancy." RCW 64.28.010 (emphasis added) (also Walsh, 183 Wn. App. at 854).

The Parchers argue that the trial court erred by finding the Parchers and Strom were tenants in common for the Sultan property. They argue that Strom's estate had no interest in the property.[4]

Washington law, indeed, requires written instruments to *expressly declare* the creation of a joint tenancy. RCW 64.28.010. The written instrument here contained no reference to a joint tenancy. Instead, the trial court based its findings of fact and conclusions of law on the statutory warranty deed, the statute, and correspondence between Robert Parcher and First American Title, which stated:

> It appears you did not instruct us to create a joint tenancy with rights of survivorship. This means that if you or Mary were to die, title would pass to the surviving spouse due to it being your community property. However, if Irvin were to die, his heirs would inherit his interest and you would have new tenant(s) in common ownership.

---

[4] As part of their argument, the Parchers contend that because "[a] man . . . in his seventies who purchases a home together with his daughter . . . and her young family logically implies that upon the death of Irvin Strom, the ownership of the home would revert to the daughter and her family." However, they offer no legal authority to support this argument and thus, we decline to consider it. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

The Parchers offer no legal or factual support for their assertion to the contrary. Thus, we hold that the trial court did not err by concluding the Parchers were tenants in common.

D.      Attorney Fees and Costs

"TEDRA grants trial courts remarkably broad discretion to award any party its reasonable attorney fees or costs." Radliff v. Schmidt, 27 Wn. App. 2d. 206, 218, 532 P.3d 622 (2023) (citing RCW 11.96A.150(1)). "Fees may be awarded to any party 'in such amount and in such manner as the court determines to be equitable.'" Id. "In exercising its discretion, the court 'may consider any and all factors that it deems to be relevant and appropriate, which factors *may* but need not include whether the litigation benefits the estate or trust involved.'" Id. (citing RCW 11.96A.150(1)) (alteration in original).

We review the trial court's award of attorney fees under RCW 11.96A.150 is reviewed for abuse of discretion. In re Guardianship of Matthews, 156 Wn. App. 201, 212, 232 P.3d 1140 (2010).

Further, "[r]easonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract, and the request is made pursuant to RAP 18.1(a)." In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009). "[A]ny court on appeal may . . . order costs, including reasonable attorneys fees to be awarded to any . . . party to the proceedings . . . involving . . . decedent's estates and properties . . ." RCW 11.96A.150(1)-(2).

The Parchers contend the trial court erred by granting the personal representative fees and costs because the representative allegedly improperly

subpoenaed certain documents from the mortgage company multiple times. However, when awarding fees and costs, the trial court did not base its decision on untenable grounds. Rather, it reviewed the personal representative's memorandum, declaration, and associated exhibits. Seeing no error, we decline to reverse the trial court's fee award to the personal representative below.

The estate requests fees for the cost on appeal. Although the estate prevails on appeal, and pursued its TEDRA petition for the benefit of the estate, we decline, in our discretion, to award attorney fees and costs to the personal representative, as we believe the finality of this litigation is most beneficial to the estate.

## III.    CONCLUSION

We affirm the trial court.

Díaz, J.

WE CONCUR:

Birk, J.

Bummer, J

12