# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

NOR'WEST VILLAGE by and through its
agent, CASCADE MANAGEMENT INC.,

Respondent,

v.

TRACI SCHULER and ALL OTHER
OCCUPANTS,

Appellants.

No. 60212-1-II

UNPUBLISHED OPINION

CHE, J. — A residential landlord, Nor'West Village, appeals the trial court's dismissal of its unlawful detainer action after granting Traci Schuler's motion for reconsideration.

Schuler rented a residential property from Nor'West, beginning in 2015. At the time, she received federal housing assistance benefits. In 2023, her benefits were terminated, but she continued to live on the property. In May 2024, Nor'West delivered both a 30-day comply or quit notice and a 30-day pay or vacate notice to Schuler. The notices alleged she had violated lease terms, city codes, and had not paid her rent since April 2023.

After a trial, the trial court initially ruled in Nor'West's favor, restoring its right to possess the property. Schuler moved for reconsideration, raising several new arguments. The trial court granted her motion, dismissing Nor'West's unlawful detainer action.

On appeal, Nor'West argues the trial court should not have considered the arguments Schuler raised for the first time in her motion for reconsideration. In the alternative, it argues the trial court abused its discretion by concluding the pay or vacate notice was legally insufficient and granting Schuler's motion. Both parties request attorney fees.

We hold that the trial court properly considered Schuler's arguments, but that it erred by concluding the pay or vacate notice was insufficient and abused its discretion by granting Schuler's motion. We deny both requests for attorney fees.

Accordingly, we reverse and remand for action consistent with this opinion.

FACTS

I. BACKGROUND AND LEASE TERMS

In 2015, Schuler signed a residential lease agreement with Nor'West. The lease term began on November 11, 2015, and continued for 12 months, subject to automatic renewal for successive terms of 12 months.

At the time, Schuler received federal housing assistance benefits. To remain eligible for assistance, Schuler had to recertify on an annual basis. The first page of the lease explained that because the lease applied to residential units financed with assistance from the United States Department of Agriculture (USDA), Rural Housing Service, it was subject to USDA, Rural Housing Service regulations and 7 C.F.R. 3560, "the provisions of which are incorporated herein." Ex. 1, at 254 (Lease Agreement).

2

The lease set Schuler's monthly "note rate" rent at $820, her monthly "basic" rent at $575, and her "utility allowance" at $82. Ex. 1, at 256. It set her monthly "tenant contribution" at $575. Ex. 1, at 256. The lease explained that under certain conditions, the tenant contribution could be increased or decreased. Ex. 1, at 256. A provision specifically noted,

> if the Rental Assistance agreement executed by the Owner and USDA, Rural Housing Service expires, Tenant understands and agrees that the monthly Tenant Contribution may be adjusted to no less than Basic rent nor more than Note Rate Rent during the remaining term of this Lease, except that, based on the Escalation Clause in this Lease, these rates may be changed by a USDA, Rural Housing Service approved rent change.

Ex. 1, at 256 (some capitalization omitted).

A provision of the lease titled, "Rental Assistance," explained that the USDA, Rural Housing Service would pay a portion of Schuler's tenant contribution directly to Nor'West. Ex. 1, at 257 (boldface and underscore omitted). However, the provision specifically stated, "Not applicable if not receiving Rental Assistance." Ex. 1, at 257 (boldface, underscore, and some capitalization omitted). The lease further explained that termination of the rental assistance paid to Nor'West on Schuler's behalf would not change Schuler's net tenant contribution.

The lease's escalation clause explained that due to increasing or decreasing costs, Nor'West could be allowed by the USDA, Rural Housing Service to increase or decrease the basic and note rate rents. However, if Nor'West did so, it was required to give Schuler 30 days' notice. The lease also explained that if Schuler failed to pay her tenant contribution amount by the sixth of the month, Nor'West could deliver notice to pay or vacate, and that if she then did not pay the full amount by the tenth day of the month, Nor'West could require her to pay a late fee of "$10.00 or 5% of the Tenant Contribution, whichever is greater." Ex. 1, at 258 (boldface and underscore omitted).

Another section outlined how either Schuler or Nor'West could terminate the lease. Nor'West could terminate or refuse renewal of the lease based on "material non-compliance" with lease terms or "good cause." Ex. 1, at 265. The lease listed "non-payment or repeated late payment of rent or other financial obligations due under the Lease" as an example of material non-compliance. Ex. 1, at 265. Good cause included, among other things, actions by the tenant that result in physical damage to the rental unit or common areas, create physical hazards, and failure to maintain the rental unit in clean condition.

Following the definitions of "material non-compliance" and "good cause," was a sub-section titled, "Notices," which read in its entirety,

> Prior to termination of the Lease, Landlord must provide Tenant with written notice of the violation, with specific reference to the provisions of the Lease or Rule(s) that have been violated. In addition:
>
> Lease Violation notices must:
> 1)   Provide Tenant an opportunity to correct the violation
> 2)   Advise that the Tenant's conduct is grounds for termination of tenancy
> 3)   Advise the Tenant of their right to respond to the notice within ten (10) calendar days after the date of the notice
> 4)   Advise the Tenant of their right to a hearing in accordance with 7 C.F.R. 3560.160
>
> Lease Termination notices must:
> 1)   Specify the date the Lease will be terminated
> 2)   Include a statement that the Landlord may initiate judicial action to enforce the Lease termination
>
> *A suit for unpaid rent and possession of the rental unit is not an action to terminate the Lease, and may be pursued by Landlord under State law, without regard to the requirements of this Section.*
>
> In accordance with 7 C.F.R. 3560.160(e), both the Notice of Violation and the Notice of Termination must be delivered to the Tenant by certified mail, return receipt requested, or hand delivered with a signed and dated acknowledgement of receipt from the Tenant. Any termination of the Lease by the Landlord must be

4

carried out in accordance with 7 C.F.R. 3560.159, State and local law, and the terms of this Lease. Tenant shall remain liable for all rent payments and other obligations under this Lease through the full Lease term, subject to Landlord's obligation to mitigate its losses.

Ex. 1, at 266 (emphasis added, boldface and some capitalization omitted).

Attached to the lease was a separate document listing the USDA Rural Development rules and regulations.

Also attached to the lease was a housing assistance payments (HAP) contract between Nor'West and the Peninsula Housing Authority (PHA). The HAP contract's term began on November 11, 2015, and continued until October 31, 2016. The HAP contract explained that it would pay the $575 "Contract rent" directly to Nor'West on behalf of Schuler who would pay $0. Ex. 1, at 275.

The HAP contract further noted that the PHA could terminate its housing assistance because of action or inaction by Schuler, and that if it did so, it would notify Nor'West in writing. Likewise, the PHA could terminate assistance because of actions taken by Nor'West, and similarly, it would notify Nor'West of such termination in writing. Finally, the HAP contract explained that it could not be construed as granting a right to Schuler "to enforce any provision of this Contract, or to assert any claim against. . . the Owner under this Contract." Ex. 1, at 280.

## II. PROCEDURAL FACTS

In November 2022, Nor'West conducted an inspection of Schuler's unit. The inspection revealed numerous issues. The inspection report concluded, in relevant part, that egress was blocked on Schuler's back porch and that there were a large number of items accumulated outside the home. On December 8, Nor'West served Schuler a notice to comply or vacate,

stating Schuler was in breach of her lease, in part, because of the items on her porch and patio, some of which blocked egresses.

On December 27, 2022, the PHA sent Nor'West written notice that it was terminating Schuler's housing assistance, effective January 21, 2023.[1] The reason was, "The unit no longer meets Housing Quality Standards established for the program." Ex. 7, at 327. It is unknown how Schuler was notified or whether she was given an opportunity to challenge the termination.

On May 9, 2024, Nor'West served Schuler a 30-day notice to comply or quit the premises. The notice explained local city codes required "front door egresses and back patios be cleared of junk accumulation that constitutes a nuisance." Ex. 2, at 293. It notified Schuler of the items, such as personal items, garbage, bicycles and wheeled apparatuses, and furniture, that needed to be reduced or removed to comply with her lease agreement. If Schuler did not remove those items, Nor'West would remove them within 14 days of the notice at Schuler's expense. The section describing the method of remedying the breach stated the lease agreement, as well as citations to rules and regulations, were attached, but the attached document and terms did not cite to Schuler's lease.

On May 10, 2024, Nor'West served Schuler a 30-day notice to pay rent or vacate the premises. The notice stated that Schuler owed $13,372 in unpaid rent and contained a ledger

---

[1] The notice is dated December 27, 2022, and states Schuler's benefits would terminate on January 31, 2022. At trial, Erin Jeffers testified that the benefits terminated around February 2023. We assume the termination date in the notice is a scrivener's error, and the correct termination date was January 31, 2023.

showing rent amounts due each month between April 2023 and May 2024.[2] The notice also explained that Schuler had a right to legal representation, and that she had 10 days to discuss the eviction with Nor'West.

Nor'West served both notices by "posting a copy in a conspicuous place on the Property and on the same day by depositing in the . . . mail . . . with First Class Mail postage." Ex. 2, at 302 (some capitalization omitted).

After the notice periods passed, Nor'West filed an unlawful detainer action alleging that it had served the notices and that Schuler had not complied with the requirements of the notice to remove her belongings outside the unit, and that she had not paid any rent. Nor'West requested possession of the unit as well as judgment for costs, unpaid rent, and attorney fees.

Schuler raised several affirmative defenses in her answer. She asserted the comply or quit notice was defective for several reasons, and that the trial court lacked jurisdiction "based on failure to serve proper unlawful detainer notice" and "based on lack of specificity in the unlawful detainer notice." Clerk's Papers (CP) at 59. She did not assert that the notices failed to comply with terms of the lease or with federal law. However, she reserved the right to rely on defenses which might become "available to her based on the facts as they become known prior to or during the trial of [the] action." CP at 61. Prior to the show cause hearing, Schuler submitted a declaration, stating in relevant part, that her "portion of the rent [was] approximately $18.00 per month." CP at 71.

_____

[2] The ledger notation showed that as of March 1, 2022, Schuler's portion was $18 and the PHA's portion was $703. Rent appeared to increase to $721 ($703 + $18) on February 1, 2023, and then increased again to $989 on March 1, 2023. Rent appeared to increase again on February 1, 2024, to $1,039. The documentation also reflected late fees.

The matter was set for trial on September 3. At trial, the trial court admitted Schuler's 2015 lease agreement including the attached rules and regulations and the HAP contract. The trial court also admitted copies of the comply or quit and pay or vacate notices, the November 2022 inspection report, the December 2022 comply or quit notice, and the PHA's notice of termination of Schuler's rental assistance.

Nor'West's property manager, Erin Jeffers, testified that Schuler was behind on her rent, which was $1,039 per month, that Jeffers served the pay or vacate notice on Schuler, that Schuler had not made any payments since service of the notice, and that Schuler was still occupying the unit. Jeffers had spoken to Schuler multiple times about cleaning up her property and habitability requirements prior to serving the May 2024 comply or quit notice. Prior to the termination of Schuler's housing assistance, Jeffers warned Schuler that failure to keep the property consistent with habitability requirements would result in her losing her housing assistance.

Schuler did not testify or present any evidence. Nor'West argued that the comply or quit notice clearly explained Schuler's violation and how she could cure it. It also argued the pay or vacate notice showed the amount of unpaid rent due, and that Schuler had not presented any contradictory evidence. The trial court inquired as to how much of Schuler's 2015 lease applied after PHA terminated her assistance. Nor'West responded that the termination of Schuler's benefits did not require issuance of a new lease; that instead, the lease continued with Schuler remaining responsible for the full rent payment.

Schuler argued that the pay or vacate notice was defective because it had not been attached to Nor'West's complaint, that Schuler was not responsible for rent payments after the

PHA terminated her housing assistance, and that there had been insufficient testimony to determine the amount of rent or if it had been adjusted. Schuler did not argue that the notices were improperly served or that the contents of the notices failed to comply with the terms of the lease or federal law.

On September 19, the trial court issued a memorandum opinion (first opinion), ruling in favor of Nor'West on both grounds for eviction: Schuler's failure to pay rent or vacate and Schuler's failure to comply with the terms of her lease or quit. It described the comply or vacate notice as having "flaws," but determined those flaws were not fatal to Nor'West. CP at 116. It further explained that because Schuler did not testify or present any evidence, it was left to conclude that she had not paid her rent, as alleged by Nor'West. The trial court determined it would terminate Schuler's tenancy, restore possession to Nor'West, and issue a writ of restitution. However, it also determined it had insufficient information to issue a money judgment against Schuler for unpaid rent, but Nor'West could note a hearing in which the court would consider further evidence on the issue. It set a date to present final orders on October 1.

On September 30, Schuler filed an objection to the proposed findings of fact and conclusions of law. She raised several arguments for the first time, based on terms of the lease, explaining that had Nor'West attached the lease to its complaint or declarations before trial, she would have addressed the arguments sooner. First, she highlighted a portion of the lease explaining that notices of lease violations and of lease terminations must be delivered by certified mail, return receipt requested, arguing Nor'West failed to do so. Second, she argued Nor'West was bound by federal regulations because when the lease was signed, Schuler's tenancy was subsidized by housing assistance benefits. As a result, she asserted the comply or

9

quit notice was defective because it did not reference the specific lease provision Schuler violated or inform her of her right to a grievance hearing, citing 7 C.F.R. 3560.159. She argued these defects were "jurisdictional." CP at 120.

Schuler contended the pay or vacate notice was defective because there was no evidence Nor'West notified Schuler that her housing assistance had been terminated, and even if it had, her responsibility under the lease would have only been $575 per month, not the larger amounts claimed by Nor'West in its notice and at trial. She renewed her arguments that the comply or quit notice was defective.

On October 1, at a hearing, the trial court heard argument on the objection and ultimately determined that Schuler's objection was a motion for reconsideration. Nor'West argued Schuler was raising untimely affirmative defenses, and that she was characterizing them as "jurisdictional" so that she could raise them late. Rep. of Proc. (Oct. 1, 2014) at 192 (where Nor'West argued it was improper to raise these arguments after trial where Schuler did not conduct discovery, did not request a continuance, and did not read the lease). It also argued that because Schuler's housing benefits had been terminated, she was no longer afforded federal protections for subsidized housing.

The trial court ruled that it would enter findings of fact (FOFs) and conclusions of law (COLs) consistent with its first opinion, but it would stay issuance of the writ of restitution until Nor'West could formally respond to Schuler's motion for reconsideration. It entered FOFs and COLs consistent with its first opinion.

Schuler filed a second motion for reconsideration on October 8, raising essentially the same arguments as before. Nor'West responded, again arguing that the issues raised by Schuler

10

were not jurisdictional and that she had waived them by failing to raise them in her answer, her trial brief, or at trial.

On October 17, the trial court issued a second memorandum opinion (second opinion), reversing its first opinion and granting Schuler's motion. It entered its order of dismissal with prejudice and order of limited dissemination on October 30, incorporating the FOFs and COLs of its second opinion.

It explained that it reversed the first opinion because "the court cannot find by a preponderance of the evidence that Nor'West complied with the termination terms of the lease, or that it gave Schuler proper notice of the amount of rent she owes." CP at 241. The trial court explained that the 2015 lease was the current operative lease (FOF 3); that even if federal regulations no longer apply to the lease, the parties were still bound by the lease's terms (FOF 4, 15); that there was no evidence presented showing how Schuler's rent became $1,039 per month compared to the $575 tenant contribution described in the lease (FOF 5, 8, 12); that PHA terminated Schuler's housing assistance after its December 2022 notice (FOF 10, 11); that "Because [Nor'West] did not provide sufficient evidence to establish how Schuler owed [$13,372], the court cannot determine Schuler was given adequate notice of rent she actually owed making the notice inadequate" (FOF 13); that the notice to comply or quit was inadequate and deficient for multiple reasons (FOF 14); and that "Nor'West did not provide any notice by certified mail, which is also a term of the lease" (FOF 17). CP at 241-44.

Nor'West appeals.

ANALYSIS

Nor'West's preliminary argument on appeal is that the trial court should not have considered Schuler's arguments involving violations of the lease terms and federal regulations on reconsideration because Schuler was raising them for the first time. In the alternative, Nor'West argues the trial court abused its discretion by granting Schuler's motion because the federal regulations did not apply to the pay or vacate notice and the pay or vacate notice was legally sufficient.

## I. STANDARD OF REVIEW

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Barr v. Young*, 187 Wn. App. 105, 111, 347 P.3d 947 (2015). "An abuse of discretion exists only if no reasonable person would have taken the view the trial court adopted, the trial court applied the wrong legal standard, or it relied on unsupported facts." *Fishburn v. Pierce County Plan. & Land Servs. Dep't*, 161 Wn. App. 452, 472, 250 P.3d 146 (2011).

Our review is limited to consideration of whether substantial evidence supports the trial court's "findings of fact and, if so, whether the findings support the trial court's conclusions of law." *Pham v. Corbett*, 187 Wn. App. 816, 825, 351 P.3d 214 (2015). We "begin[] with a presumption in favor of the trial court's findings and the appellant has the burden of showing that a finding of fact is not supported by substantial evidence." *Id*.

Where an appellant does not assign error to findings of fact, those findings are verities on appeal. *Kitsap County Consol. Hous. Auth. v. Henry-Levingston*, 196 Wn. App. 688, 697, 385 P.3d 188 (2016). "We review legal conclusions de novo, even if denominated as findings of fact." *Id*.

## II. WHETHER THE TRIAL COURT PROPERLY CONSIDERED SCHULER'S MOTION FOR RECONSIDERATION

Nor'West first argues the trial court abused its discretion by considering Schuler's arguments in her motion for reconsideration because Schuler's arguments were procedural defenses and Schuler was raising them for the first time after trial. We disagree.

A party may raise an issue for the first time in a motion for reconsideration, but only if that issue is "'not dependent upon new facts and [is] closely related to and part of the original theory.'" *Schreiner Farms, Inc. v. Am. Tower, Inc.*, 173 Wn. App. 154, 158, 292 P.3d 407 (2013) (quoting *Nail v. Consol. Res. Health Care Fund I*, 155 Wn. App. 227, 232, 229 P.3d 885 (2010)). Because a trial court decides a case based on the evidence submitted to it, it is limited to the same evidence on a motion for reconsideration under CR 59(a)(5)-(9). *Jet Boats, Inc. v. Puget Sound Nat'l Bank*, 44 Wn. App. 32, 42, 721 P.2d 18 (1986).

Here, the trial court did not abuse its discretion by considering Schuler's arguments. Although Schuler had not argued that either notice violated federal law or the terms of the lease prior to the motion, she did generally raise the issue in her answer, listing as an affirmative defense, "Lack of jurisdiction based on failure to serve proper unlawful detainer notice." CP at 59. In the answer, she reserved the right to later rely on defenses that would become available to her based on facts learned at trial. Further, in the motion, she based her new arguments upon the terms of the lease, which was introduced for the first time at trial, admitted at trial, and properly before the trial court. *See Reitz v. Knight*, 62 Wn. App. 575, 581 n.4, 814 P.2d 1212 (1991) (trial court properly considered argument for the first time on reconsideration where moving party made "extensive arguments" in motion for reconsideration, "based on evidence presented at

trial"). Thus, it was reasonable for the trial court to consider Schuler's new arguments because they were not dependent on new facts and were closely related to Schuler's original theories.

Nor'West contends Schuler "waived" her right to raise these arguments under CR 12(h). Br. of Appellant at 11. CR 12(h) deems "insufficiency of process" and "insufficiency of service of process" generally waived if not raised in a CR 12 motion or responsive pleading. But Nor'West fails to explain why Schuler's answer, which raised "failure to serve proper unlawful detainer notice" and reserved the right to rely on defenses which might become available later in the proceedings, was insufficient to preserve the arguments.[3]

### III. SUFFICIENCY OF THE 30-DAY PAY OR VACATE NOTICE

We now turn to the trial court's decision to grant Schuler's motion. Nor'West argues the trial court erred by concluding federal regulations and the federal terms of the lease applied to the notice to pay or vacate even though Schuler was no longer receiving housing assistance. Nor'West contends the "express terms" of the lease provide that those requirements do not apply to suits for unpaid rent and possession. Br. of Appellant at 18. Accordingly, Nor'West submits the pay or vacate notice was legally sufficient. We agree the notice was sufficient.

---

[3] Schuler appears to suggest that the requirements of pre-eviction notices determine whether a superior court has subject matter jurisdiction over unlawful detainer proceedings. But "the state constitution vests the superior court with subject matter jurisdiction in unlawful detainer actions, and its jurisdiction remains constant regardless of procedural missteps by the parties." *Hous. Auth. of Seattle v. Bin*, 163 Wn. App. 367, 373-74, 260 P.3d 900 (2011). No defects or errors in the handling of unlawful detainer cases, by either the parties or the court, bear on subject matter jurisdiction. *Id*. at 377.

A.      *The Lease Provisions Referencing 7 C.F.R 3560.159 and .160 Did Not Apply to the Pay or Vacate Notice*

We interpret leases the same way we interpret other contracts.  *See Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014) (where court used contract interpretation rules to interpret a lease).  Our main objective is "to ascertain the mutual intent of the parties at the time they executed the contract."  *Id.* at 712.  We determine the parties' intent by focusing on the contract language's reasonable meaning.  *Id.* at 712-13.  "[W]e view the contract as a whole, interpreting particular language in the context of other contract provisions."  *Id.* at 713.  "We review the trial court's conclusions of law pertaining to contract interpretation de novo."  *Radliff v. Schmidt*, 27 Wn. App. 2d 205, 212, 532 P.3d 622 (2023).

Here, the trial court did not find that federal regulations applied to Schuler's tenancy after PHA terminated her housing assistance; however, it did find that the explicit terms of the lease still applied.  The termination of tenancy section of the lease laid out specific requirements for notices of violation and notices of termination, apparently derived from the federal regulations.  The requirements include that specific language must appear on the face of the notices, that termination must comply with 7 C.F.R. 3560.159 and .160, and that the notices be delivered by certified mail, return receipt requested.

However, the same notice section expressly exempts suits for unpaid rent and possession of the unit, noting that they are not "action[s] to terminate the Lease, and may be pursued by Landlord under State law, without regard to the requirements of this Section."  Ex. 1, at 266 (some capitalization omitted).  Viewing the lease as a whole and divining the mutual intent of the parties from the plain and unambiguous language when they signed the lease, it appears that the

15

parties intended that the notice section not apply where Nor'West sues for nonpayment of rent and possession of the unit under state law.

Schuler appears to argue that the express exemption is ineffective because notices terminating federally-subsidized tenancies must comply with state and federal laws, regardless of lease terms. But Schuler's federal housing assistance, the basis for applying certain federal requirements, terminated years prior to Nor'West's service of the pay or vacate notice. Additionally, Schuler appears to disregard express terms in the agreement. *See Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup America, Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012) ("An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used"). Thus, we apply the federal regulations only to the extent they are applicable to the situation.

Accordingly, the pay or vacate notice was exempt from the requirements of the section of the lease describing notice for termination of tenancy. To the extent the trial court concluded Nor'West was required to deliver the notice by certified mail, return receipt requested, or that it was required to contain the statutory language provided in that portion of the lease, we conclude the trial court erred.

B.      *The Pay or Vacate Notice was Legally Sufficient*

Having determined that the lease terms pertaining to termination of tenancy and federal regulations do not govern Nor'West's notice to pay or vacate, we now consider whether the notice was legally sufficient. Nor'West argues that it was sufficient because it substantially complied with state requirements. We agree the notice was sufficient.

16

1. *Legal Principles*

In Washington, chapters 59.12 and 59.18 RCW govern residential unlawful detainer actions. *Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 210, 528 P.3d 834 (2023). "An unlawful detainer action is a statutory proceeding that provides an expedited method of resolving the right to possession of leased property and related issues such as restitution and rent." *Id.* A landlord may initiate an unlawful detainer action against a tenant for several reasons, including when

> [t]he tenant continues in possession in person . . . after a default in the payment of rent, and after written notice requiring, in the alternative, the payment of the rent or the surrender of the detained premises has remained uncomplied with . . . The written notice may be served at any time after the rent becomes due.

RCW 59.18.650(2)(a); *see* RCW 59.12.030.

In an unlawful detainer action, the landlord has the burden of proving its right to possession by a preponderance of the evidence. *Hernandez v. France*, 29 Wn. App. 2d 777, 784, 544 P.3d 518 (2024). At minimum, proving the right to possession requires a landlord to establish that a tenancy exists and the terms of that tenancy. *Id.* at 785. A landlord has to prove "ownership of the property, a landlord-tenant relationship, proper notice to vacate, and the Tenants' failure to comply." *Liverpool LLC v. Farley*, 33 Wn. App. 2d 568, 581, 563 P.3d 457 (2025).

Before initiating an unlawful detainer action, the landlord must serve a written notice upon the tenant, served consistently with RCW 59.12.040. *Kiemle*, 26 Wn. App. 2d at 210. The version of RCW 59.12.040 in effect at the time of this action did not require notices to be sent by certified mail, but instead instructed that "if a person of suitable age and discretion" could not be found at the premises, it was sufficient to "affix[] a copy of the notice in a conspicuous place on

17

the premises. . ., and also delivering a copy to a person there residing, if such a person can be found, and also sending a copy through the mail addressed to the tenant, or unlawful occupant." Former RCW 59.12.040(3) (2021).

The adequacy of a pre-eviction notice is a mixed question of law and fact which we review de novo. *Kiemle*, 26 Wn. App. 2d at 215. Landlords must strictly comply with any timing and manner requirements regarding notice. *Id*. However, landlords need only substantially comply with the form and content requirements of notice. *Id*.

The notice must "'[i]dentify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause or causes with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged.'" *Id*. at 211 (quoting RCW 59.18.650(6)(b)). The notice must also be particular enough such that it is not deceptive or misleading. *Garrand v. Cornett*, 31 Wn. App. 2d 428, 439-40, 550 P.3d 64 (2024).

2. *Analysis*

"The critical question here is whether [Nor'West's] notice provided enough facts to allow [Schuler] to 'effectively rebut the conclusion reached' by [Nor'West]." *Kiemle*, 26 Wn. App. 2d at 215. Or in other words, "whether [Schuler] understood the factual allegations against her." *Id*. at 216.

First, Nor'West argues that the termination of tenancy requirements laid out in the lease did not apply to the pay or vacate notice, and we agree. The trial court concluded, "Nor'West did not provide any notice by certified mail, which is also a term of the lease." CP at 244 (FOF 17). As discussed above, the trial court erred to the extent it concluded the federal notice terms

applied to the pay or vacate notice. And the pay or vacate notice was posted in a conspicuous place on the property and mailed to Schuler as required by state law. Thus, Nor'West strictly complied with the manner requirements of notice as described in former RCW 59.12.040(3) (2021).[4] *Kiemle*, 26 Wn. App. 2d at 215.

Next, we turn to the form and content requirements of notice.

The trial court concluded that Nor'West provided insufficient evidence to establish the amount Nor'West claimed Schuler owed on the pay or vacate notice, and that as a result, it could not "determine Schuler was given adequate notice of rent she actually owed making the notice inadequate." CP at 243 (FOF 13). But the form and content of a pre-eviction notice need only substantially comply with requirements. *Kiemle*, 26 Wn. App. 2d at 215.

Thus, we must consider whether the pay or vacate notice provided enough facts to allow Schuler to rebut the conclusion reached by Nor'West, or in other words, whether Schuler understood Nor'West's factual allegations against her. *Id.* at 215-16. We conclude that it did.

Here, the pay or vacate notice provided an accounting for the amount of unpaid rent demanded, explained that Schuler had thirty days to pay or Nor'West might initiate judicial proceedings, and provided a location where Schuler could pay. It provided Schuler both a ledger and listing of payments and charges and it notified Schuler that she had ten days to talk with Nor'West about the eviction.

---

[4] The notice section of the lease does not state how many days of notice must be given in such cases, and as discussed, even if it did, the requirements of that section did not apply to Nor'West's pay or vacate notice. However, a separate section of the lease describing vacation of the unit provides that vacation must occur within 30 days of notification by the landlord. Ex. 1, at 255. And the 30 days of notice given to Schuler exceeded the 14 days notice requirement she was entitled to under Washington state law. RCW 59.12.030(3).

The notice identified specific enough facts and circumstances to allow Schuler to effectively rebut Nor'West's allegations. It explained that she owed unpaid rent, provided an accounting of how much was owed for each month, provided a method to remedy the violation, and warned that judicial proceedings might occur. And the uncontradicted evidence at trial was that Schuler's rent had gone unpaid for several months.

To that end, Nor'West asserts it was not required to be accurate to the penny in order to repossess the unit. We agree.

Nor'West cites to *Provident Mutual Life Insurance Co. v. Thrower*, 155 Wash. 613, 285 P. 654 (1930), and *Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973), to support this assertion. In *Provident*, our Supreme Court described a pay or vacate notice provided to Thrower claiming she owed $430 in unpaid rent. 155 Wash. at 614-15. The lease agent and Thrower disagreed at trial regarding the amount of rent owed, and ultimately, a jury found that while Thrower was not entitled to possession of the property, she only owed $265 in unpaid rent instead of the $430 claimed in the notice. *Id.* at 615. After trial, Thrower filed multiple motions, and Provident agreed to waive the $265 judgment in exchange for maintaining judgement for restitution of the premises. *Id.* at 615-16. Sufficiency of the notice, with regard to the amount of unpaid rent noted, was not before the Court. *Id.* at 616-17.

In *Foisy*, the tenant was served with a pay or vacate notice claiming $355 due in unpaid rent. 83 Wn.2d at 32. Although the lease clearly noted the tenant's rent for the first six months of his tenancy, at trial, the parties disputed how much the tenant owed for the seventh and eighth months he possessed the property. *Id.* at 32-33. The trial court concluded the tenant had committed unlawful detainer, but it also found that the reasonable rent owed was lower than the

landlord had claimed on the pay or vacate notice. *Id.* at 24. On appeal, the Supreme Court

concluded the landlord's notice represented a "good faith determination as to the amount of

rental due." As a result, the landlord's "demand for rent[] was in substantial compliance with the

statute and the fact that there was a dispute as to the amount of rent due, which was later

determined contrary to the [landlord], should not invalidate the unlawful detainer proceeding."

*Id.* at 33.

Schuler attempts to distinguish these cases from her own. She argues that in those cases,

the trial court was provided with sufficient evidence to determine the amount of unpaid rent

owed, whereas here, it was not. She also suggests that the cases only support sufficiency of

notice where the discrepancy between claimed unpaid rent and unpaid rent found at trial is

"minor." Br. of Resp't at 36. We find these arguments unpersuasive.

Despite Schuler's suggestion, neither *Foisy* nor *Provident* condition their holdings on

whether the discrepancy in amounts was only "minor." *Foisy* concluded that the landlord's pay

or vacate notice substantially complied with the applicable unlawful detainer statute. It

explained that the trial court's later finding that the tenant owed less than the notice demanded

"should not invalidate the unlawful detainer proceeding." 83 Wn.2d at 33. Schuler fails to show

why, in a case like hers, holding a subsequent hearing to determine the actual amount of rent

owed would be improper. We agree that the issue of the amount of unpaid rent owed requires

further fact-finding, but the pay or vacate notice was sufficient to establish Nor'West's right to

possession of the unit.

Schuler also asserts that the pay or vacate notice was defective because it included late

fees in its unpaid rent amount, which was "misleading." Br. of Resp't at 40. She cites to RCW

21

59.18.283(2) for the proposition that her right to possession of the property cannot be conditioned on payment of an amount other than rent. But the pay or vacate notice also showed that Schuler had not paid her rent for more than twelve months. Thus, her right to possession was conditioned on paying rent, which, according to the notice, she failed to do for an extended period of time. Regardless of whether Nor'West is entitled to the late fees claimed in its pay or vacate notice, Nor'West successfully showed that Schuler owed rent and had not paid it for several months. As a result, we find this argument unpersuasive.

Notwithstanding our conclusion that the trial court abused its discretion by concluding the pay or vacate notice was legally insufficient, Schuler argues we should still affirm because Nor'West failed to prove its right to possession of the property by a preponderance of the evidence. We disagree.

Schuler argues Nor'West failed to establish the "terms" of its lease with Schuler because it did not establish the actual amount of rent she owed at trial. Br. of Resp't at 42. But the trial court found that the parties were bound by the terms of the 2015 lease. And the lease required a monthly tenant contribution of $575. These findings are unchallenged, and thus verities, on appeal. As explained above, Schuler owed rent to Nor'West for several months and failed to pay any amount of rent during that time. Thus, we find Schuler's argument unavailing.[5]

---

[5] Schuler appears to suggest that Nor'West failed to show she ever owed more than $0 per month, as outlined in her 2015 HAP contract when she still received housing assistance. We agree that the trial court found no evidence of a new lease or notification of increased rent from Nor'West. However, Schuler's suggestion ignores her declaration wherein she stated her monthly rent payment was $18. It also ignores the fact that her housing assistance was terminated in January 2023, and that the terms of the lease stated that Schuler would owe the rent if her rental assistance was terminated.

Finally, Schuler argues that she would be deprived of her post-judgment remedies under RCW 59.18.410(2) and (3) if the trial court was allowed to rule in favor of Nor'West without determining the exact amount of unpaid rent due. We disagree.

RCW 59.18.410(2) provides tenants, who have been found liable for unlawful detainer after a default in rent, five days to exercise options to repay the amount of the judgment and restore their tenancy. RCW 59.18.410(3) provides tenants a means to move for a stay in the execution of a writ of restitution, depending on factors such as "The tenant's ability to timely pay the judgment," among others. RCW 59.18.410(3)(a)(iii).

Schuler asserts she would be unable to exercise these remedies without knowing the amount of the judgment against her. But Schuler is not deprived of these remedies. They become available once the trial court determines a judgment amount. As was the case here, before the trial court granted Schuler's motion for reconsideration, a judgment would not be entered until the amount of unpaid rent was determined. Thus, we are unpersuaded by this argument.

Because the trial court erred by concluding the pay or vacate notice was legally insufficient and therefore abused its discretion by granting Schuler's motion for reconsideration, we reverse and remand for action consistent with this opinion.[6]

## IV.  ATTORNEY FEES

Both parties request attorney fees on appeal. Schuler requests attorney fees under RCW 59.18.290(2), RCW 4.84.330, and *Council House, Inc. v. Hawk*, 136 Wn. App. 153, 159, 147

---

[6] Because we reverse based on the sufficiency of the pay or vacate notice, we need not address Nor'West's arguments pertaining to its comply or quit notice.

P.3d 1305 (2006). Nor'West requests attorney fees based on a lease provision and RCW 59.18.410. We deny both requests.

RAP 18.1(a) allows us to award attorney fees and costs "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." "A request for appellate attorney fees requires a party to include a separate section in her or his brief devoted to the request." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). "Argument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees as costs." *Stiles*, 168 Wn. App. at 267.

RCW 59.18.410(1) allows trial courts to award reasonable attorney fees following a verdict in an unlawful detainer action pursuant to RCW 59.18.290. RCW 59.18.290(2) allows a prevailing landlord to recover attorney fees involved with a holdover tenant's continued occupancy of a property "after the termination of the rental agreement." This fee award is subject to limitation. *See* RCW 59.18.290(3).

Both parties refer to a lease "provision," which reads, "If Landlord brings an Unlawful Detainer Action in State court and is successful, the court *may* order Tenant to pay all court costs and Landlord's expenses, including reasonable attorney fees." Ex. 1, at 266 (emphasis added, some capitalization omitted). RCW 4.84.330 requires that

> any action on a . . . lease. . . where such. . . lease specifically provides that attorneys'
> fees and costs, which are incurred to enforce the provisions of such . . . lease, shall
> be awarded to one of the parties, the prevailing party, whether he or she is the party
> specified in the. . . lease or not, shall be entitled to reasonable attorneys' fees in
> addition to costs.

Schuler's arguments for attorney fees are based on laws granting fees to a prevailing party. Because we reverse the trial court's grant of her motion for reconsideration, she does not prevail on this appeal, and accordingly, we deny her request for attorney fees.

Nor'West provides no argument but cites to the language of the lease and RCW 59.18.410 as grounds for fees on appeal. Because Nor'West provides no argument as to why it is entitled to attorney fees on appeal under RCW 59.18.410 or why it is entitled to fees under the term of the lease, which is discretionary, we deny its request as well.

CONCLUSION

We hold that the trial court properly considered Schuler's arguments, but that it erred by concluding the pay or vacate notice was insufficient and abused its discretion by granting Schuler's motion. We deny both requests for attorney fees.

Accordingly, we reverse and remand for action consistent with this opinion.

A majority of the panel, having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Veljacic, C.J.

25